**Opinion issued September 4, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00201-CV

————————————

## IN THE INTEREST OF V.L.B., a child

———

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-46873**

———

## OPINION ON REHEARING

The Department of Family and Protective Services has moved for rehearing, asking that we clarify our opinion and judgment to reverse only the portion of the trial court's judgment terminating K.M.'s parental rights and leave intact the trial court's termination of the rights of the alleged and unknown fathers, a ruling that

was not challenged on appeal. We grant rehearing, withdraw our opinion and judgment of August 14, and issue the following in their stead.

K.M. appeals the termination of her parental rights to her daughter, V.L.B., contending that the trial court violated her statutory right to appointment of counsel and her constitutional due process rights. In particular, she complains that the trial court erred in trying the termination case against her on the merits before considering an affidavit of indigence that she had filed a week earlier. We reverse the portion of the trial court's judgment terminating K.M.'s parental rights, including the findings of fact and conclusions of law supporting that ruling, and remand that portion of the cause for a new trial. We leave undisturbed the remainder of the trial court's judgment.

## Background

In November 2012, K.M. was arrested and charged with an assault against her mother, B.M. When the police arrested K.M., she left her four-month-old child, V.L.B., in the care of two of her friends. These friends resisted handing the child over to B.M. After receiving a referral alleging neglectful supervision, the Department took custody of V.L.B. The child was temporarily placed with B.M. K.M. pleaded guilty to the assault charge and spent two weeks in jail.

After receiving a complaint of neglectful supervision, the Department petitioned for temporary conservatorship and to terminate the parent-child

2

relationship in early February 2013. Later that month, the trial court signed temporary orders. The trial court "ma[de] no finding with regard to the indigency of [K.M.] because . . . insufficient information is available to make such a determination at this time."

During the course of the proceedings, the trial court held a few status hearings. K.M. appeared in person without counsel for those hearings. The Department provided its permanency plan and progress reports to the trial court. It reported that it had ruled out the allegation against K.M. of neglectful supervision, and it made no finding with respect to the allegation against her friends. It reported a permanency plan for V.L.B. that had relative adoption as the primary goal and unrelated adoption as the concurrent goal.

K.M. filed an affidavit of indigence with the trial court on December 2, 2013. At that point, the record does not reveal that any counsel had appeared or represented K.M. in these proceedings.

The trial court began a termination trial a week later, on December 10, 2013. K.M. was not represented by counsel when the trial court allowed the Department to proceed with its first witness, the caseworker. After the Department finished its direct examination, the trial court remarked, "Well, I've got a problem with the fact that [K.M.] has filed an indigency form . . . as of several days ago. So we need to ask [her] a few questions." Instead of immediately addressing the indigency

3

issue, though, the Department passed its witness to the child's attorney ad litem for questioning.

The Department then presented its next witness, and finally, called K.M., still without counsel, to the stand. The Department (DFPS Counsel) questioned K.M. as follows:

| | |
|---|---|
| DFPS COUNSEL: | You were present in the court back on February 26th; is that correct? |
| A. | Yes. |
| DFPS COUNSEL: | At that time you indicated to the Court that you had employment? |
| A. | Yes. |
| DFPS COUNSEL: | And you were ordered to pay child support . . . to begin March 1st? |
| A. | Yes. |
| DFPS COUNSEL: | Why haven't you done that? |
| A. | I'm not employed. |
| DFPS COUNSEL: | And so did you lie to the Court when you said you were? |
| A. | Yes. That's the reason why I had got the affidavit of indigence. |
| DFPS COUNSEL: | And, in fact, Judge if the Court will take notice of its file on April 16th of 2013, the mother was found in this court to be not indigent. |
| THE COURT: | Was that the last court date? |
| DFPS COUNSEL: | April 16th, 2013. |

4

| | |
|---|---|
| A. | There was one time that I asked for [an] appointed court lawyer and it was denied because I was working and when I came back— |
| DFPS COUNSEL: | So how long have you not been working? |
| A. | It's been a couple of months. |
| DFPS COUNSEL: | So why have you not prepared an affidavit of indigency when you were unemployed instead of waiting until three days before trial? |
| A. | When I came back to court, I asked for it and it got requested and I did get the paperwork, but the money and everything to get it filed, I know it's not really a whole lot, but for somebody with no income coming in, it has been a lot. I've been putting off school so I can try to get a job; but due to my record because of the assault with my mother and everything like that, it hasn't been working out. So I thought, well, I need some type of source of income to come in. So I just decided to go back to school so I can at least pay child support, you know. I will pay the 189. I mean, that's not a problem to me at all. I mean, I have dates that—when I have the refund coming in and when I'm going to school, school schedules. |
| DFPS COUNSEL: | Who's paying for school? |
| A. | Financial aid. |
| DFPS COUNSEL: | And how much income tax do you have coming in? |
| A. | Income tax? |
| DFPS COUNSEL: | You said you had a refund coming? |

5

| | |
|---|---|
| A. | The most that you can get is like $600 to like $800 a month if you're a full–time student. The least you can get as a part–time student is four to $500 as you can get as a part-time student is four to $500 a month. So $189— |
| THE COURT: | Income tax refund? That doesn't sound— |
| DFPS COUNSEL: | What type of— |
| CPS CASEWORKER: | She's referring to student loan. |
| A. | Financial aid. |
| DFPS COUNSEL: | For money that you— |
| A. | To go to school with. . . . What I don't use for the school, that's what I'm left with. |

Following that line of questioning, the Department began examining K.M. on issues relating to the alleged grounds for termination. During the examination, K.M. directly brought up the issue of legal representation:

| | |
|---|---|
| A. | I've done several things to—legal wise to handle this situation. I've been to volunteer attorneys. I mean, unfortunately, I don't have the money for that. I mean— |
| THE COURT: | You don't have the money for volunteer lawyers? |
| A. | Because they put it in small print . . ., some fees may apply. . . . |
| THE COURT: | No, no, no. |
| A. | Unless that's not a legit— |
| THE COURT: | That's not legit. Houston Volunteer Lawyers is free. |

A. Okay. Well, somebody is scamming, then . . . .

The Department then passed the witness for questioning by the child's ad litem. Afterward, the trial court informed the parties that the trial was in recess and that it planned to appoint counsel for K.M.:

THE COURT: I am going to appoint Christopher Buck to represent you.

K.M.: Is he here?

THE COURT: He's not here. I'm going to recess this hearing, and we will commence it after he's had a couple of weeks, or let's do it after the first of the year, so he has an opportunity to get up to speed on your case.

The Department's counsel asked the trial court to clarify that the trial was in "recess" and that "we're not starting over." The trial court agreed.

The trial continued on January 21, 2014. The Department's counsel stated: "I would indicate to the Court just on a follow-up on December 10, we were in here. At that time we went forward in trial. At that time, the Agency proved up termination grounds of D, E, N and O, and failure to support on the mother. . . . And we're to continue the trial today . . . ." The Department did not present any additional witnesses.

Appointed counsel asked the trial court for additional time for the mother to complete the service plan. Relevant to the request, appointed

7

counsel elicited testimony from K.M., the child advocate, and the caseworker.

The trial court denied the request for additional time and terminated K.M.'s parental rights. The final decree for termination states that she "appeared in person and through attorney of record Christopher Lee Buck and announced ready." The reporter's record, however, does not support that pronouncement with respect to the trial proceedings conducted on December 10.

## Discussion

K.M. contends that the trial court violated her statutory and constitutional due process rights by proceeding with a trial on the merits before ruling on her request for appointment of counsel.

The Texas Family Code provides that in a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of an indigent parent who responds in opposition to the termination. TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2014). A parent's filing of an affidavit of indigency "trigger[s] the process for mandatory appointment of an attorney ad litem." *In re K.L.L.H.*, No. 06-09-00067-CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.) (citing TEX. FAM. CODE ANN. § 107.013(d)).

*Waiver*

We first address the Department's contention that K.M. waived her right to counsel. Relying on *In re B.L.D.*, 113 S.W.3d 340 (Tex. 2003), the Department contends that appointed counsel's failure to object to the earlier proceedings conducted without counsel waived the issue on appeal.

In *In re B.L.D.*, the Texas Supreme Court held that counsel's failure to timely object to a jury charge error waived the charge complaint on appeal. *See id.* at 349. The record in this case is different: it shows that K.M. informed the trial court of her request for legal representation by filing an affidavit of indigence a week before the trial date. The trial court raised the issue of K.M.'s request early in the trial proceedings. At that time, K.M. effectively renewed her request for appointment of counsel when she volunteered testimony about her efforts to obtain counsel. Having filed her affidavit of indigence and appeared in opposition to the termination suit, K.M. was not required to make another formal request for appointment of an attorney. *See In re J.M.*, 361 S.W.3d 734, 736–37 (Tex. App.—Amarillo 2012, no pet.) ("There appear to be no magic words that are required to be 'in opposition' to a request for termination."); *In re T.R.R.*, 986 S.W.2d 31, 37 (Tex. App.—Corpus Christi 1998, no pet.) (concluding that parent's statement "I want my rights" was enough to require inquiry into indigency status).

9

When K.M. later received counsel, counsel focused his efforts on requesting a continuance to allow K.M. to complete the family service plan, pointing out that ["i]f she had had counsel throughout this case and if I were on this case, I would have made sure to follow up with her . . . [a]nd . . . she would have been in much better shape, as far as her Service Plan to date." After the trial court ruled that K.M.'s parental rights were terminated, K.M. effectively renewed her plea for additional time.

In *In re B.L.D.*, the Supreme Court recognized the "[i]mportant prudential considerations that underscore" the rules on preservation, observing that "[r]equiring parties to raise complaints at trial conserves judicial resources by giving trial courts the opportunity to correct an error before the appeal proceeds." 113 S.W.3d at 349. That opportunity presented itself here, as the record shows that K.M., both on her own and through counsel, alerted the trial court to the representation issue before and during the course of the trial.

Unlike the charge error complaint in *B.L.D.*, a pro se request for appointment of counsel in a parental termination case gives rise to affirmative duties on the part of the trial court. *See In re C.L.S.*, 403 S.W.3d 15 (Tex. App.— Houston [1st Dist.] 2012, pet. denied) (holding that, before permitting a parent to appear pro se at trial, trial court should have first warned parent of dangers of self-representation and obtained valid waiver of right to counsel on record). Nothing in

the record shows that K.M. chose to proceed pro se or that the trial court found she waived her right to counsel. The trial court did not admonish her of the dangers of self-representation before proceeding with the trial on the merits. On this record, we hold that K.M. did not waive her right to counsel.

### Timing of appointment

Complete failure of a trial court to appoint counsel for indigent parents constitutes reversible error. *See Odoms v. Batts*, 791 S.W.2d 677, 679–80 (Tex. App.—San Antonio 1990, no writ); *In the Interest of T.R.R.*, 986 S.W.2d 31, 37 (Tex. App.—Corpus Christi 1998, no pet.); *see also In re C.D.S.*, 172 S.W.3d 179, 185–86 (Tex. App.—Fort Worth 2005, no pet.) (reversing termination judgment based on failure to appoint counsel for indigent mother where her parental rights were terminated pursuant to her voluntary relinquishment some eight months after she filed affidavit of indigence and following numerous reports about mother by Department to court). The question presented here is whether delaying that appointment until after the commencement of the termination trial does as well. Section 107.013 does not specify the time by which an indigent parent requesting representation must receive it. But the following section, which delineates the powers and duties of an attorney ad litem for a parent, sheds some light on the issue. *See* TEX. FAM. CODE ANN. § 107.0131 (West 2014). Within a reasonable time after the appointment, the attorney ad litem must:

- interview the parent, the parties to the suit, and each person with knowledge of the case;

- investigate the facts of the case;

- review all court files and conduct discovery as necessary "to ensure competent representation at hearings, mediations, pretrial matters, and the trial on the merits;" and

- meet with the parent before each hearing and abide by the parent's objectives for representation.

*Id.* § 107.0131(1).  The parent's attorney ad litem is entitled to:

- request a hearing or trial on the merits;

- consent or refuse to consent to an interview of the parent by another attorney;

- receive a copy of each pleading or other paper filed with the court;

- receive notice of each hearing in the suit;

- participate in any case staffing conducted by the Department in which the parent is invited to participate; and

- attend all legal proceedings in the suit.

*Id.* § 107.0131(1).

An attorney ad litem appointed for a parent under Chapter 107 who fails to perform the duties required by Section 107.0131 is subject to disciplinary action. *See* TEX. FAM. CODE ANN. § 107.0133.  These expansive duties are commensurate with the seriousness of the rights at stake.  *See In re B.G.*, 317 S.W.3d 250, 257 (Tex. 2010); *In re C.L.S.*, 403 S.W.3d at 20.

12

Considering the mandatory nature of the appointment of counsel upon a finding of indigency, and the appointed attorney's specific obligations in connection with representing an indigent parent, a trial court should address a parent's affidavit of indigence as soon as possible—before the next critical stage of the proceedings, whether it be a hearing, a mediation, a pretrial conference, or, in particular, a trial on the merits, and allow a reasonable time for appointed counsel to make necessary preparations. *See* TEX. FAM. CODE ANN. §§ 107.0131, 107.133. When an indigent parent seeks representation before a critical stage of the proceedings, and the trial court nonetheless proceeds with that stage, the delay may render the ultimate appointment a toothless exercise and irreparably impair the parent's ability to defend the case or regain custody of the child.

In this case, K.M. filed her affidavit of indigence a week before the trial setting. The case's statutory dismissal date was two months after the trial setting, and no party had yet asked for the dismissal date to be reset. The commencement of trialon December 10 was a critical stage of the termination proceedings, at which the indigent mother was not represented by counsel. Under these circumstances, we hold that the trial court erred in failing to first consider K.M.'s affidavit of indigency and appoint an attorney ad litem to represent her before proceeding with the termination trial. *See* TEX. FAM. CODE ANN. §§ 107.013(d)), 107.0131(1).

13

## Conclusion

We hold that the trial court erred in failing to appoint an attorney ad litem for K.M. before proceeding with a trial on the merits.  We therefore reverse the portion of the trial court's judgment terminating K.M.'s parental rights, including the findings of fact and conclusions of law supporting that ruling, and remand that portion of the cause for a new trial.  We leave undisturbed the remainder of the trial court's judgment.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.