**Opinion issued March 5, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00826-CV

————————————

## IN THE INTEREST OF J.M., A MINOR CHILD

---

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Case No. 7443**

---

## MEMORANDUM OPINION

K.M. appeals from the trial court's judgment terminating her parental rights to her daughter, J.M. In two issues, K.M. contends that (1) the trial court erred in failing to timely appoint her counsel and (2) the evidence was legally insufficient to support the termination of her parental rights. We affirm.

## Background

In August 2013, when J.M. was six months old, the Department of Family and Protective Services ("the Department") received a referral of neglectful supervision and physical neglect of J.M. by her parents, K.M. and D.M. The referral alleged that K.M. and D.M. left J.M.'s seven year old half-sister to care for J.M. Aleda Jarvis, the Department investigator assigned to the case, interviewed K.M. and D.M.[1] During the meeting, K.M. tested positive for methamphetamines and amphetamines and admitted to taking Xanax without a prescription and to smoking marijuana two weeks earlier. When Jarvis discussed placing J.M. outside of the home, K.M. decided to leave her parents' home and leave J.M. in the care of her grandparents.

The Department subsequently filed a petition for conservatorship and termination of parental rights, accompanied by Jarvis's supporting affidavit. In its petition, the Department requested that the case be set for temporary hearing pursuant to Family Code section 262.205 and that the Department be appointed the temporary managing conservator after the hearing.

The trial court held a hearing on September 26, 2013. At the hearing, K.M. testified that she agreed to place J.M. with her parents and acknowledged that although she could have contested the hearing, she believed working with the

---

[1] J.M.'s sibling stated in her interview that she saw her father, D.M., smoke brown cigarettes and had also seen him use "a light, spoon, and a shot."

2

Department to address certain issues and placing J.M. with her parents was in her child's best interest. Following the hearing, the trial court signed a temporary order appointing the Department as temporary managing conservator of J.M. In its order, the court deferred its finding regarding an attorney ad litem for K.M. because she "has not appeared in opposition to this suit or has not established indigency."

In October 2013, the Department held a family group conference and a family service plan was created for the parents. K.M., who was in a drug rehabilitation program at the time, participated by phone. K.M.'s plan required her to take numerous actions, including successfully completing a drug rehabilitation program and attending an after-care program following her release, obtaining and maintaining a stable home environment and a legitimate income, submitting to random drug tests, contacting the Department caseworker at least twice a month and notifying the caseworker within forty-eight hours of an address and/or phone number change, addressing domestic violence issues, completing a psychological evaluation, and attending individual counseling.

The trial court held a status hearing on November 14, 2013. At the hearing, the following exchange between K.M.'s caseworker, Samantha Gonzalez, and the court took place:

> [Ms. Gonzalez]: I had a phone conversation with [K.M.] and she requested that she be appointed an attorney.

3

[Court]: Okay. I don't have an application. Can you—She's not incarcerated. She's in a rehab, right?

[Ms. Gonzalez]: Yes, sir, in Beaumont.

[Court}: Can you get documents to her?

[Ms. Gonzalez]: Yes.

[Court]: If we can get an application for counsel to her, and then—

[Ms. Gonzalez]: Absolutely.

[Court]: —get that back and review her financial status, and then I'll be able to make a decision.

[Ms. Gonzalez]: Okay.

The trial court approved the family service plan for K.M. in its order signed the same day.

The trial court held a permanency hearing on February 11, 2014. At the hearing, Gonzalez testified that despite successfully completing her sixty-day rehabilitation program, K.M. tested positive for methamphetamines, amphetamines, and marijuana approximately one month after her release from the program. At the conclusion of the hearing, the trial court orally appointed attorneys to represent K.M. and D.M. and signed its order one week later.

The trial court held another permanency hearing on May 6, 2014, to evaluate K.M.'s progress on her service plan. Gonzalez testified that K.M. had continued to test positive for drugs since the February 2014 permanency hearing. Gonzalez also

testified that although the Department's initial goal had been family reunification with a concurrent goal of relative adoption, due to K.M.'s lack of progress on her service plan the primary goal was changed to relative adoption with a concurrent goal of family reunification at the February 2014 permanency conference. With regard to J.M.'s placement, Gonzalez testified that J.M. was thriving with her maternal grandparents.

In July 2014, K.M. completed a second drug rehabilitation program and, following her release, moved in with her uncle. In August 2014, D.M., who had been in jail since May on charges of delivery of a controlled substance, filed an affidavit voluntarily relinquishing his parental rights to J.M. The case proceeded to trial on September 9, 2014.

At trial, K.M. testified that the Department removed J.M. in August 2013 because of K.M.'s continued drug use. Despite the requirement of her family service plan that she find and maintain stable housing, K.M. testified that she moved at least ten times—including living with friends and with D.M. in motels— during the one-year pendency of the case and failed to provide her caseworker with an address where she could be contacted between January and July 2014. K.M. admitted to testing positive for methamphetamines, amphetamines, and marijuana in April and June 2014. She entered a one-month rehabilitation program in June 2014. K.M. testified that she was going to start a job working from 2 p.m. to 10

5

p.m. at Brooks Brothers after the trial but had not yet researched daycare options for J.M.

Gonzalez, K.M.'s caseworker, testified that K.M. had a chronic problem keeping in touch with her and that K.M.'s lack of contact made it difficult to set up the required services. According to Gonzalez, there were multiple occasions when K.M. gave her an incorrect address, told her that she did not have an address, or simply did not respond to Gonzalez's request for an address. In March 2014, Gonzalez received a referral alleging that K.M. was living in a public housing subdivision with a friend with whom she was using methamphetamines in the presence of children. When Gonzalez confronted K.M. with the allegation, K.M. responded that she did not want to be in a relationship with D.M. anymore and wanted to return to rehab. However, Gonzalez testified that K.M visited D.M. seven times while he was in jail between May and September 2014. Gonzalez also testified that K.M. completed a second rehabilitation program in July 2014 but that, as with the first program, she failed to participate in after-care treatment following her release.

With regard to K.M.'s interaction with her daughter, Gonzalez testified that K.M.'s visits with J.M. went well. However, Gonzalez also testified that from May until the trial in September, K.M. only saw J.M. six times but visited D.M. in

6

jail seven times, and that K.M. missed a visit with J.M. in June because she slept through her alarm clock.

Gonzalez testified that J.M. has been in a stable environment with her maternal grandparents for the past year, and that her grandparents have gone "above and beyond" in consistently meeting all of J.M's needs.

Traci and Bob Moran, K.M.'s mother and stepfather, testified that they love J.M. very much and would like to adopt her. The Morans own their own business and have lived in the same home for the past sixteen years. J.M. attends daycare during the week and Traci and Bob have worked out a division of labor with regards to J.M.'s care in the mornings and evenings. Traci testified that J.M. is healthy and is hitting all of her developmental milestones.

At the conclusion of testimony, the jury determined that K.M.'s parental rights to J.M. should be terminated, and the trial court entered a termination order on October 2, 2014. This appeal followed.

## Discussion

### A. Appointment of Counsel

The trial court appointed counsel for K.M. seven months before trial commenced. In her first issue, K.M. contends that this appointment was not timely.

The Texas Family Code provides that in a suit filed by a governmental entity in which termination of the parent-child relationship or the appointment of a conservator for the child is requested, the court shall appoint an attorney ad litem to represent the interests of an indigent parent who responds in opposition to the termination or appointment. TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2014). Section 107.013(d) requires that a "parent who claims indigence under Subsection (a) must file an affidavit of indigence in accordance with Rule 145(b) of the Texas Rules of Civil Procedure before the court can conduct a hearing to determine the parent's indigence under this section." *Id.* § 107.013(d) (West 2014). The filing of an affidavit of indigence "trigger[s] the process for mandatory appointment of an attorney ad litem." *In re V.L.B.*, 445 S.W.3d 802, 805–06 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *In re K.L.L.H.*, No. 06–09–00067–CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.)).

After a parent has filed an affidavit of indigence, the court may, but is not required to, conduct a hearing to determine whether the parent is indigent. *See* TEX. FAM. CODE ANN. § 263.0061(b) (West 2014). Section 107.013 contains no specific timetable for appointing an attorney ad litem to represent the parent's interests. *See In re M.J.M.L.*, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied). We are asked to determine whether the appointment of counsel was untimely in this case.

8

In its September 26, 2013 temporary order, the trial court deferred ruling on the appointment of counsel for K.M. because it found that she had not "appeared in opposition to this suit or has not established indigency." At the November 14, 2013 status hearing, after Gonzalez testified that K.M. had requested court-appointed counsel, the trial court indicated that there was no application for counsel on file and requested that the Department provide K.M. with the appropriate paperwork. At the February 11, 2014 permanency hearing, Gonzalez again indicated that K.M., who was present at the hearing, requested an attorney. The trial court orally appointed an attorney to represent her and signed a written order to that effect one week later.

The record does not reflect that K.M. ever filed an answer or testified in opposition to removal of J.M. or filed an affidavit of indigency as required by section 107.013 at any time prior to the appointment of counsel on February 11, 2014.[2] *See In re C.Y.S.*, No. 04–11–00308-CV, 2011 WL 5971068, at \*4 (Tex. App.—San Antonio Nov. 30, 2011, no pet.) (mem. op.) (finding no abuse of discretion where at hearing on temporary orders, trial court expressly deferred ruling on appointment of counsel for mother because it found mother had not "appeared in opposition to this suit or has not established indigency," as required by statute). Moreover, the Department's stated permanency goal for J.M. was

---

[2] The record contains an affidavit of indigency executed by K.M. on October 2, 2014.

family reunification until the February 19, 2014 permanency conference, when it was changed to relative adoption due to a lack of progress by K.M. and D.M. on their family service plans. In addition, the attorney ad litem was appointed to represent K.M. seven months before the commencement of trial. *See id.* at *5 (concluding appointment of counsel four months before trial did not violate section 107.013); *In re M.J.M.L.*, 31 S.W.3d at 354 (holding appointment of counsel six months after case began was not in itself violation of section 107.013). We further note that K.M. does not assert that her counsel was unprepared or otherwise rendered ineffective assistance due to the timing of the appointment, but rather contends that had she been appointed counsel earlier she may have been more successful in her plan of service. We conclude that the trial court did not err by appointing an attorney ad litem for K.M. at the conclusion of the February 11, 2014 permanency hearing.

K.M. also complains that the trial court erred in failing to admonish her of her right to be represented by counsel. Relying on Family Code section 262.201, she argues that the trial court had a duty to inform her of her right to counsel at the September 23, 2013 adversary hearing. K.M.'s reliance on section 262.201 is misplaced.

Section 262.201(a) of the Family Code requires that "a full adversary hearing shall be held not later than the 14th day after the date the child was taken

into possession by the governmental entity . . . ." TEX. FAM. CODE ANN. § 262.201(a) (West 2014). Subsection (a-1) further requires that before the hearing begins, "the court must inform each parent not represented by an attorney of: (1) the right to be represented by an attorney; and (2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney." *Id.* § 262.201(a-1). Section 262.201 thus applies to suits in which a child has been taken into possession of the Department which had not taken place here. *See id.*

The record reflects that after K.M. tested positive for drugs in August 2013, J.M. remained with her maternal grandparents and K.M. left her parents' home. In its original petition, the Department requested that the case be set for temporary hearing pursuant to section 262.205 ("Hearing When Child Not in Possession of Governmental Entity") and that the Department be appointed the temporary managing conservator after the hearing. The trial court set a hearing "to determine whether the Department's request for temporary orders in this case should be granted." The trial court's order following the hearing was expressly made pursuant to section 262.205 and the court's findings mirrored the language in section 262.205(b).[3] Because there is no provision in section 262.205 requiring an

---

[3] Subsection (b) provides that "[a]fter the hearing, the court may grant the request to remove the child from the parent, managing conservator, possessory conservator, guardian, caretaker, or custodian entitled to possession of the child if the court finds sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) reasonable efforts have been made to prevent or eliminate the need to remove

11

admonishment regarding the right to counsel, the trial court did not err in not admonishing her. Accordingly, we overrule K.M.'s first issue.

## B. Sufficiency of the Evidence

In her second issue, K.M. challenges the legal sufficiency of the evidence to support termination of her parental rights. Specifically, she argues that the evidence was legally insufficient to support the jury's finding that termination was in J.M.'s best interest.

### 1. Applicable Law and Standard of Review

Protection of the best interest of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's rights to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Accordingly, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Nonetheless, "the rights of natural parents are not

---

the child from the child's home; and (2) allowing the child to remain in the home would be contrary to the child's welfare."

TEX. FAM. CODE ANN. § 262.205 (West 2014).

absolute" and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d at 361. Recognizing that a parent may forfeit his or her parental rights by their acts or omissions, the primary focus of a termination suit is protection of the child's best interests. *Id.*

In a case to terminate parental rights under section 161.001 of the Family Code, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362.

In a legal sufficiency review in a parental rights termination case, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder

could do so, disregarding all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review of the record, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient. *Id.*

## 2. Analysis

The jury found the evidence sufficient to support termination of K.M.'s parental rights under four statutory grounds: subsections (D), (E), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O), & (P).[4] K.M. acknowledges that

---

[4] As relevant here, section 161.001(1) states that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence, in addition to the best interest finding, that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . . .
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; or

> (P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, (i) failed to complete a court-ordered substance abuse

14

the undisputed evidence showing that she tested positive for methamphetamines and amphetamines on multiple occasions, and her admission to using those drugs as well as marijuana, is sufficient to establish the predicate ground under subsection (P) and, thus, does not challenge the sufficiency of the evidence supporting the first prong under section 161.001.  Rather, she challenges the legal sufficiency of the evidence that termination of her parental rights was in J.M.'s best interests.  *See* TEX. FAM. CODE ANN. § 161.001(2).

There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014).  In determining whether termination is in a child's best interest, we consider several non-exclusive factors, including (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person

---

treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance . . . .

TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O) & (P) (West 2014).

15

seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is improper, and (9) any excuse for acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department is not required to prove all of these *Holley* factors, and the absence of evidence about some factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Evidence establishing one of the predicate acts under section 161.001(1) may also be relevant to determining the best interest of the child. *See id.* at 27–28.

### a.    Child's Desires, Needs, and Plans for the Child

At the time of trial, J.M. was only nineteen months old and, thus, too young to testify about her desires. *See In re T.G.R.-M.*, 404 S.W.3d 7, 16 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However, when children are too young to express their desires, the factfinder may consider whether the children have bonded with the proposed adoptive family, are well-cared for by them, and whether they have spent minimal time with a parent. *See In re S.R.*, — S.W.3d —, —, 2014 WL 5898453, at *15 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, no pet. h.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest

16

determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See C.H.*, 89 S.W.3d at 28.

The evidence shows that J.M. had bonded with her grandparents and was well-cared for by them. Gonzalez testified that J.M. had been in a stable environment with her maternal grandparents for the past year and that her grandparents had gone "above and beyond" in consistently meeting all of J.M's needs. The Morans testified that they loved J.M. very much and wanted to adopt her. J.M. currently attends a daycare and the Morans have worked out a division of labor with regards to J.M.'s care in the mornings and evenings. Traci testified J.M. is healthy and is hitting all of her developmental milestones.

The evidence also shows that K.M.'s visits with J.M. went well and that she acted appropriately with her daughter. However, Gonzalez testified that although K.M. contacted her for a visit in April 2014, she did not hear back from her until May 2014; that from May until the trial in September, K.M. saw J.M. only six times but saw D.M. in jail seven times; and that K.M. missed a visit with J.M. in June because she slept through her alarm clock. K.M. also testified that she had moved at least ten times—including living with friends and with D.M. in motels— during the one-year pendency of the case and had only been living at her current

17

address with her uncle less than two months. The evidence above related to the second and sixth *Holley* factors supports the jury's best interest finding.

**b.      Physical Danger to the Child and Parental Acts or Omissions**

The third factor is the current and future physical danger to the child. *Holley*, 544 S.W.2d at 371–72. The eighth factor considers acts or omissions of the parent that indicate the parent-child relationship is improper. *Id.* at 372.

The evidence shows that following the referral of neglectful supervision and physical neglect of J.M., K.M. continually tested positive for use of illegal drugs. K.M. continued to maintain a relationship with D.M., an admitted drug user who was in jail on a charge of drug dealing at the time of trial. K.M.'s inability to refrain from drug use, as well as her continued relationship with D.M., reflect an inability to perceive the danger that parental drug use would pose to a child. *See In re G.A.*, 2012 WL 1068630, at *6 (concluding father's concealment of drug use and continued relationship with mother who abused drugs, demonstrated father's inability to perceive danger that parental drug use posed to child). Although there was evidence that K.M. had successfully completed a second rehabilitation program a month and a half before trial, the jury is not required to ignore a long history of dependency merely because it abates as trial approaches. *See In re M.G.D.*, 108 S.W.3d 508, 513 (Tex. App.—Houston [14th Dist.] 2003, pet.

denied); *In re J.F.C.*, 96 S.W.3d at 272. This evidence weighs against K.M. under the third and eighth *Holley* factors.

### c. Parenting Abilities and Stability of the Home

The fourth *Holley* factor considers the parenting abilities of the parent seeking custody. The evidence shows that K.M.'s visits with J.M. went well and that she changed her diapers and played with her during visits. However, the jury also heard evidence that K.M. failed to complete a number of her plan services. In fact, Gonzalez testified that due to K.M.'s lack of progress on her service plan and her failure to show up at the permanency conference in February 2014, the Department changed the primary goal from family reunification to relative adoption. A factfinder can infer from a parent's failure to take the initiative to avail herself of the programs offered by the Department that she did not have the ability to motivate herself to seek out available resources needed now or in the future. *See In re W.E.C.*, 110 S.W.3d 231, 245 (Tex. App.—Fort Worth 2003, no pet.). Further, a parent's exercise of poor judgment currently and in the past demonstrates an inability to provide adequate care for the child. *See Wischer v. Tex. Dep't of Family & Protective Svcs.*, No. 03-12-00165-CV, 2012 WL 3793151 (Tex. App.—Austin Aug. 29, 2012, no pet.) (mem. op.) Parental drug abuse is obviously reflective of poor judgment and is also a factor to be considered in

19

determining a child's best interest. *See In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.).

The seventh *Holley* factor considers the stability of the home. K.M. testified that she had moved at least ten times during the one-year pendency of the case. Although the evidence shows that K.M. was living with her uncle for the month and a half before trial, a factfinder can conclude that a parent's changes shortly before trial are too late to have an impact on the best interest determination. *See In re S.R.*, — S.W.3d —, —, 2014 WL 5898453, at *13; *In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that father's "efforts to improve his ability to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect"). A parent's drug use has also been found to be a condition that can indicate instability in the home environment. *See P.W. v. Dep't of Family and Protective Svcs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.). Gonzalez also testified that J.M. had been in a stable environment with her maternal grandparents for the year prior to trial and that her grandparents consistently met all of her needs. The fourth and seventh factors support the jury's finding that termination is in J.M.'s best interest.

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that

20

termination of the parent-child relationship was in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *J.F.C.*, 96 S.W.3d at 265–66. Accordingly, we hold that the evidence is legally sufficient to support the jury's finding that termination of K.M.'s parental rights was in J.M.'s best interest. We therefore overrule K.M.'s second issue.

## Conclusion

We affirm the trial court's judgment.



Russell Lloyd
Justice


Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

21