

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00174-CV
_____

IN THE INTEREST OF J.F. II, A CHILD

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2017-527,563; Honorable John J. McClendon III

November 6, 2019

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, B.T., presents two issues challenging the trial court's order terminating her parental rights to her son, J.F. II.[1] First, she maintains the associate judge erred when she did not appoint counsel to represent her and erred again by allowing retained counsel to withdraw a week prior to commencement of the trial on the merits in violation of Rule

---

[1] To protect the privacy of the parties involved, we refer to them by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018). *See also* TEX. R. APP. P. 9.8(b). The father's parental rights were also terminated; however, he did not appeal.

10 of the Texas Rules of Civil Procedure.[2] By her second issue, B.T. alleges that failure to appoint counsel for the trial on the merits resulted in due process violations that were not cured by the appointment of counsel for the *de novo* hearing. We reverse and remand.

### BACKGROUND

B.T. has a history of methamphetamine use. She suffers from multiple ailments and takes numerous medications. She has been diagnosed with bipolar disorder, anxiety, asthma, migraines, seizures, polycystic ovarian syndrome (insulin resistance) and has a pituitary tumor. During her testimony, B.T. described at least ten medications that she had been prescribed for her ailments.

When J.F. II was born in October 2017, the Texas Department of Family and Protective Services was notified that he tested positive for amphetamines. Two days after his birth, the Department filed its petition for his protection, as well as for conservatorship and for termination of B.T.'s parental rights.

On November 1, 2017, B.T. filed her *Application for Appointment of Attorney & Affidavit of Indigence*. That same day, the trial court (a former associate judge) signed an order finding that B.T. was indigent and appointed counsel to represent her. On March 12, 2018, B.T. chose to retain a family lawyer and filed a *Motion to Substitute Counsel.*

---

[2] Initially, this appeal was filed pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), as having no merit. This court concluded there were arguable issues presented and abated the appeal and remanded the cause to the trial court for appointment of new counsel. *See In re J.F. II*, No. 07-19-00174-CV, 2019 Tex. App. LEXIS 6811, at *6-7 (Tex. App.—Amarillo Aug. 6, 2019, order).

Citing B.T.'s failure to cooperate, on August 15, 2018, retained counsel moved to withdraw.

No order appears in the clerk's record granting the motion to withdraw. At the commencement of the trial on the merits on September 14, 2018, B.T. requested a court-appointed attorney and moved for a continuance. She announced that she needed a continuance to "get an attorney. I need a court-appointed one, if you can." The trial court indicated there had been a hearing on retained counsel's motion to withdraw just a week earlier on September 7, 2018, at which B.T. was not present. The trial court then asked B.T. if she would "have been asking the Court to release [retained counsel] or would [she] have been asking the Court to keep him on as [her] attorney?" She answered, "[r]elease."

The trial continued with the Department and attorney ad litem for the child both opposing a continuance based on the child's need for permanence. B.T.'s verbal motion for continuance as well as her request for court-appointed counsel were denied. She proceeded *pro se* at the trial on the merits.

Before the presentation of testimony, the parties discussed with the trial court a pending approval of a home study related to the child's foster placement with a relative in Oklahoma. With a dismissal date of October 8, 2018 looming, the trial court granted a recess until September 28, 2018, to resolve the child's placement.

When the trial resumed on September 28th, the Department announced, "present and ready to proceed . . . ." B.T. again moved for a continuance and was advised by the trial court to announce her name "but state not ready," and B.T. complied. She explained that she had attempted to retain counsel but did not have the financial resources for fees

3

being quoted to her by several attorneys. She also sought the assistance of Legal Aid and the Texas Tech Law School Clinic but was denied assistance. The day before the trial had resumed, B.T. again filed paperwork establishing her indigence as well as requesting the appointment of counsel. The trial court acknowledged the filing but deferred ruling on the request for counsel. The Department again opposed a continuance and eventually, the trial court again denied B.T.'s motion for continuance. The court also ruled, "[y]our request for additional time to get a court-appointed or hired attorney is also denied."

The trial continued with B.T. as the first witness. Without any legal representation, she answered questions from three attorneys. After the presentation of witnesses and evidence, the trial court again ruled that B.T.'s motion for continuance as well as her request for an extension of the dismissal date were denied. The ruling continued as follows:

> [f]urther, [B.T.] had again applied for a court-appointed attorney. I find that that is her second request for court-appointed attorney, having released her first one, and then had representation by a hired attorney, who has now since withdrawn. I am denying her request for that second court-appointed attorney as *untimely*. I believe it was the day prior to the final hearing when that application was received.

(Emphasis added).[3]

After another recess, the last day of trial resumed on October 19, 2018. B.T. was not present. According to the record, she was on her way to the trial when she passed

---

[3] Rule 145 of the Texas Rules of Appellate Procedure which governs the procedure for a party who files a *Statement of Inability to Afford Payment of Court Costs* does not provide a deadline for the filing of the pertinent documents. TEX. R. CIV. P. 145.

out and was taken to the emergency room by a friend. B.T. sent her friend to the proceedings to advise the trial court that she was hospitalized and unable to attend. Without counsel or an advocate to represent B.T., the trial court announced, "[w]e are going to go on without her."

The trial continued with the caseworker and two other witnesses testifying for the Department. The foster mother also testified telephonically. Their testimonies were not subjected to cross-examination by B.T. or an advocate for B.T.

Based on the Department's case, the trial court found clear and convincing evidence to support termination of B.T.'s parental rights for (1) knowingly placing or allowing her child to remain in conditions or surroundings that endangered his physical or emotional well-being, (2) engaging in conduct or knowingly placing her child with persons who engaged in conduct that endangered his physical or emotional well-being, and (3) failing to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2019). The trial court also found that termination of B.T.'s parental rights to J.F. II was in his best interest. § 161.001(b)(2). Finally, the trial court found that B.T. failed to provide by a preponderance of the evidence any explanation as to why she was unable to comply with the provisions of the court order, or whether she had made a good faith effort to comply and why the failure to comply was not her fault. § 161.001(d).

B.T. filed a request for a *de novo* hearing before the referring court. In her written request, she listed her issue as the lack of representation at the trial on the merits and explained that she was absent on the final day because she had been hospitalized.

The *de novo* hearing commenced on November 19, 2018. B.T. was still without legal representation and stated, "I don't know if I can get a lawyer for this . . . I almost have enough money saved up . . . ." B.T. also requested a continuance, which was again opposed by the Department and by the attorney ad litem for the child.

The referring court announced that it would be reading the entire record from the trial and relying on the testimony that had been previously presented.[4] Counsel for the Department added that the caseworker would be providing testimony on the child's status and his placement.[5]

The caseworker testified the child was doing well in his foster home in Oklahoma. B.T. then attempted to cross-examine her, although inartfully. Numerous objections to B.T.'s questions were sustained. After cross-examination of the caseworker, the *de novo* hearing was recessed pending preparation of the reporter's record from the trial on the merits.

---

[4] The reporter's record was not yet transcribed but the referring court expressed its intent to read it in its entirety once prepared. Section 201.015(c) of the Family Code authorizes the referring court to consider the record from the hearing before the associate judge. TEX. FAM. CODE ANN. § 201.015(c) (West Supp. 2019).

[5] We note that section 201.015(c) of the Family Code provides that in a *de novo* hearing, witnesses may testify on the issues specified in the request—here the denial of counsel at the trial on the merits—in addition to consideration by the referring court of the record from the trial on the merits. The statute does not address presentation of new evidence unrelated to the issues raised by the party seeking *de novo* review.

More than three months later, on February 27, 2019, the *de novo* hearing resumed. The referring court announced that it had read the transcription from the trial on the merits. The court also stated that B.T. had been arrested the night before for various traffic violations. She had been transported to the holding area to await continuation of the *de novo* hearing when she experienced medical problems that required hospitalization. The *de novo* hearing was continued and the trial court declared, "[i]t is going to be my intent to appoint [B.T.] an attorney, so I'll give that attorney an appropriate amount of time to get prepared." The hearing was recessed and counsel was appointed that same day to represent B.T.

Several months later, on May 16, 2019, the *de novo* hearing resumed, this time with court-appointed counsel representing B.T. The referring court made known that it had read and would be considering the reporter's record from the trial on the merits. Noting that B.T. was without counsel at the previous *de novo* hearing, the referring court notified the parties that "we'll treat it as if we're pretty much starting over" and allowed the Department to re-open its evidence. The Department offered into evidence Petitioner's Exhibit 1, six volumes from the trial on the merits. The exhibit was admitted without objection.

B.T.'s counsel re-urged B.T.'s motion for continuance and for an extension of the case deadline to give B.T. the opportunity to work her services guided by the assistance of counsel. The motion was denied and the *de novo* hearing continued. The Department presented the caseworker who testified regarding medical issues the child had developed since his placement. She also offered testimony regarding plans for the foster parent to adopt the child. B.T.'s drug use was also revisited as the reason for the child's removal.

7

B.T. was the only witness in her defense.  She admitted being a drug addict but testified she had not used methamphetamine since she had discovered she was pregnant with J.F II.  She disputed the positive drug test results given the various prescription medications she was taking.  She also testified concerning pending criminal charges.

The referring court took the matter under advisement.  Subsequently, the trial court signed an order terminating B.T.'s parental rights on the same statutory grounds that the associate judge had found.

### ISSUE TWO—DENIAL OF THE RIGHT TO COUNSEL

We begin our review with issue two as it is dispositive of this appeal.  As noted by appellate counsel, the record filed in this case "is a nightmare" and the reporter's record is "extremely confusing."  The following table sets forth a timeline for the termination proceedings.

| September 14, 2018 | Commencement of trial on the merits without counsel |
| September 24, 2018 | Continuation of trial on the merits without counsel |
| October 4, 2018 | Continuation of trial on the merits without counsel |
| October 19, 2018 | Continuation of trial on the merits without counsel |
| November 19, 2018 | Commencement of *de novo* hearing without counsel |
| February 27, 2019 | Continuation of *de novo* hearing with appointment of counsel |
| May 16, 2019 | Continuation of *de novo* hearing with appointed counsel |

At issue in this appeal is B.T.'s denial of the right to appointed counsel until February 27, 2019, sixteen months after J.F. II was removed from B.T.'s care. In assessing whether B.T.'s fundamental right to be represented by counsel has been violated in this case, we are mindful that termination cases are to be resolved expeditiously. TEX. FAM. CODE ANN. § 263.401(a) (West 2019). In light of those considerations (a parent's right to counsel and a child's need for an expeditious resolution of the proceedings), the history of this case illustrates an unnecessary and harmful delay in appointing counsel.

### APPLICABLE LAW

The bond between a parent and child is not given by law. It is endowed by our Creator. *In re A.M.*, No. 18-0905, 2019 Tex. LEXIS 1042, at *2 (Tex. Oct. 18, 2019) (citing THE DECLARATION OF INDEPENDENCE para. 2 (U.S. 1776) (Blacklock, J., concurring in denial of petition)). The natural right existing between parents and their children is of constitutional dimensions. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). *See also Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Parental rights are sacred; they encompass a value "far more precious than any property right." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky*, 455 U.S. at 758-59).

A decree terminating the natural right between a parent and a child "is complete, final, irrevocable and divests for all time that natural right as well as all legal rights, duties and powers" between the parent and child. *Holick*, 685 S.W.2d at 20. In seeking to permanently sever the parent-child relationship, the trial court must "observe

fundamentally fair procedures." *In re E.R.*, 385 S.W.3d at 555. Consequently, termination proceedings are strictly construed in favor of the parent. *Id.* at 563.

Legal representation is a necessity and not a luxury. *United States v. Chronic*, 466 U.S. 648, 653, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects [the parent's] ability to assert any other rights [the parent] may have." *Id.* at 654. The complete denial of counsel at a critical stage of a proceeding is unfair and fails to subject the prosecution's case to "meaningful adversarial testing . . . ." *Id.* at 659.

The Texas Family Code mandates that in a government-initiated termination of the parent-child relationship, an indigent parent who responds in opposition to the termination *shall* be provided with appointed counsel. TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2019) (Emphasis added). Once a parent is determined to be indigent for purposes of section 107.013, the parent is "presumed to remain indigent for the duration of the suit" unless a motion for reconsideration is filed. § 107.013(e). *See In re P.M.*, 520 S.W.3d 24, 26 (Tex. 2016) (holding that the right to appointed counsel under section 107.013(a)(1) applies to all proceedings, including proceedings in the Texas Supreme Court).

To trigger the process for mandatory appointment of counsel in a termination proceeding, a parent must file an affidavit of indigence pursuant to Rule 145 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 145. When, as here, an affidavit of indigence is uncontested, it is conclusive as a matter of law. *Pattison v. Spratlan*, 539 S.W.2d 60, 61 (Tex. 1976), *cert. denied*, 429 U.S. 1001, 97 S. Ct. 531, 50 L. Ed. 2d 612 (1976).

Rule 145 has no deadline for parents to file the necessary documents to establish their indigence. Neither does section 107.013 of the Family Code impose a time in which to appoint counsel for indigent parents. However, given the seriousness of the rights at stake; *In re B.G.*, 317 S.W.3d 250, 257 (Tex. 2010), a trial court should address a parent's affidavit of indigence "as soon as possible—before the next critical stage of the proceedings . . . ." *In re V.L.B.*, 445 S.W.3d 802, 807 (Tex. App.—Houston [1st Dist.] 2014, no pet.). What then is the "critical stage" in a termination proceeding?

According to *In re V.L.B.*, a hearing, a mediation, a pretrial conference or, in particular, *a trial on the merits*, are all critical stages of termination proceedings. (Emphasis added). *See id. See also In re J.O.A.*, 262 S.W.3d 7, 18 (Tex. App.—Amarillo 2008), *modified*, 283 S.W.3d 336 (Tex. 2009) ("A critical stage in a termination proceeding is any stage where substantial rights of the parties may be affected.").

The Texas Supreme Court recently decided that a *de novo* hearing pursuant to section 201.015 of the Texas Family Code is not a true "trial *de novo*" in the traditional sense of that term. *In re A.L.M.-F.*, No. 17-0603, 2019 Tex. LEXIS 426, at *12 (Tex. May 3, 2019). "It is a process that is mandatory when invoked but expedited in time frame and *limited in scope.*" *Id.* (Emphasis added). In a *de novo* hearing, the parties may present witnesses on the issues specified in the request for the hearing and the referring court may consider the record from the trial before the associate judge. *See In re N.V.*, 554 S.W.3d 217, 220 (Tex. App.—Amarillo 2018, pet denied).

The commencement of the trial on the merits is the adversarial hearing at which the governmental entity seeking to terminate the parent-child relationship marshals its

proof. Without the guiding hand of counsel to test the Department's evidence, the adversarial process is presumptively unreliable. *In re J.M.O.*, 459 S.W.3d 90, 94 (Tex. App.—San Antonio 2014, no pet.) (citations omitted). The *de novo* stage of a termination proceeding is merely a hearing before a different tribunal and not a true "trial de novo"—a complete retrial on all issues. *In re A.L.M.-F.*, 2019 Tex. LEXIS 426, at *10-12. It is simply a "mechanism for reviewing an associate judge's merits adjudications." *Id.* at *12. As such, a *de novo* hearing may actually be less important than the trial on the merits before the associate judge in those situations where an adversarial hearing has taken place and an order terminating parental rights has been entered.

### ANALYSIS

B.T. asserts her due process rights were violated by the denial of appointed counsel at the trial on the merits. That error, she maintains, was not cured when counsel was later appointed for the continuation of the *de novo* hearing. We agree.

Initially, we address the Department's argument that B.T. waived her right to counsel. While this court acknowledges that preservation rules apply to parental termination cases and complaints based on constitutional error; *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) (citing *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003)), those cases are distinguishable. The Supreme Court in *In re K.A.F.* was addressing a parent's failure to timely file a notice of appeal, which was required to invoke the appellate court's jurisdiction. 160 S.W.3d at 928. *In re B.L.D.* involved the failure to preserve a complaint on jury charge error in a parental termination case. 113 S.W.3d at 350. The Supreme Court explained that the rationale behind preservation rules is to conserve "judicial

resources by giving trial courts an opportunity to correct an error before an appeal proceeds and to "promote fairness among litigants." *Id.*

In the underlying case, on the first day of the trial on the merits, B.T. asked if she could "get an attorney. I need a court-appointed one, if you can." Magic words were not required to bring the matter to the trial court's attention to preserve error for appellate review. *Sand Point Ranch, Ltd. v. Smith*, 363 S.W.3d 268, 274 n.11 (Tex. App.—Corpus Christi 2012, no pet.). After a two-week recess, the trial court asked B.T. if she wanted an attorney "only if an extension [was] granted?" B.T. replied, "I need one regardless. I would like one." The record shows that B.T. made her complaint known to the trial court and that the trial court ruled adversely to her. *See* TEX. R. APP. P. 33.1(a)(1). B.T. provided the trial court with two opportunities to correct the decision to deny her appointed counsel thereby satisfying the rationale expressed in *In re B.L.D.*

Relying on *In re S.M.T.*, No. 13-17-00064-CV, 2017 Tex. App. LEXIS 6795, at *33 (Tex. App.—Corpus Christi July 20, 2017, no pet.) (mem. op.), and *Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet. ref'd), the Department advances another argument in support of its position that B.T. waived her right to counsel. In *Medley*, this court recognized that a waiver of counsel could ordinarily be withdrawn and the right to counsel reasserted and granted if it did not (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State. 47 S.W.3d at 24. The parent in *In re S.M.T.* specifically waived his right to counsel at a hearing even though he had previously filed an affidavit of indigence. 2017 Tex. App. LEXIS 6795, at *33. In that case, he insisted on representing himself even after being admonished by the trial court about his right against self-

incrimination. When the parent later asked for counsel because he did not understand his legal rights, the trial court denied his request. *Id.* at *35. Citing *Medley*, the court in *In re S.M.T.*, found the parent had failed to meet his burden to show that appointment of counsel would not cause delay or prejudice. *Id.* at *37.

We reject the Department's arguments that B.T. waived her right to counsel. To equate the circumstances in *In re S.M.T.* and *Medley* with the facts in the underlying case is insincere. B.T. first sought and was granted appointed counsel in November 2017. The presumption of her indigence continued even though she retained counsel for a brief period. After repeated denials of her requests for court-appointed counsel, she sought continuances to retain new counsel. Any unnecessary delay in the proceedings was not attributable to B.T.; rather, the delay was due to the trial court's repeated refusals to provide B.T. with appointed counsel.

Denial of the right to counsel under section 107.013(a) is reversible error. *See In re E.A.F.*, 424 S.W.3d 742, 747 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re J.M.*, 361 S.W.3d 734, 738-39 (Tex. App.—Amarillo 2012, no pet.); *In re C.D.S.*, 172 S.W.3d 179, 186 (Tex. App.—Fort Worth 2005, no pet.). *See also In re M.P.*, No. 02-18-00361-CV, 2019 Tex. App. LEXIS 904, at *4 (Tex. App.—Fort Worth Feb. 7, 2019, no pet.) (mem. op.) (finding reversible error in proceeding to trial without first considering a parent's affidavit of indigence even after the Department conceded that upon the parent's filing of an affidavit of indigence, the trial court should have addressed it prior to proceeding with the trial on the merits). There are two requirements for a parent to be entitled to appointed counsel under the statute, both of which B.T. satisfied. First, the parent must be indigent. It is undisputed that B.T. had been declared indigent by the

former associate judge when termination proceedings were initiated in 2017. The associate judge who presided at the trial on the merits was also aware of B.T.'s indigent status. B.T.'s presumption of indigence went unchallenged and thus, remained intact throughout the proceedings. That she temporarily was represented by retained counsel did not alter her status. *See In re M.H.*, 02-18-00329-CV, 2019 Tex. App. LEXIS 2231, at \*4-6 (Tex. App.—Fort Worth March 21, 2019, no pet.) (mem. op.). In *In re M.H.*, an indigent parent had retained and then fired an attorney to represent him in a termination proceeding. At the permanency hearing, the parent appeared *pro se* and the trial court inquired on the status of his legal representation. When asked if he was asking for a court-appointed attorney, he answered, "[n]o" but then responded, "[f]or today, Your Honor, you can let me have one." The trial court did not appoint an attorney and the parent represented himself to the conclusion of the proceedings which resulted in termination of his parental rights. *Id.* at \*3-4. The Fort Worth Court concluded that it was the trial court's responsibility, not the *pro se* litigant's, to clarify any ambiguity on representation before proceeding with the trial and held "the trial court reversibly erred by failing to . . . have an attorney appointed to represent [the parent] during the termination hearing." *Id.* at \*6.

Second, the parent must oppose the Department's petition. B.T. demonstrated her resistance to the termination proceedings. She zealously represented herself despite her unambiguous and repeated requests for appointed counsel. The two instances in which she did not appear at trial were due to medical issues that required hospitalization—a matter also uncontested by the Department. The proceedings continued without her presence and without an advocate to defend her parental rights.

15

The Department argues that the denial of counsel at the trial on the merits did not harm B.T. because she was subsequently appointed counsel for the *de novo* hearing. We find the subsequent appointment of counsel to be "too little, too late" because the referring court, in its *de novo* review, announced that it was considering the record from the trial on the merits before the associate judge. In doing so, it expressly indicated that it was considering evidence developed during a part of the proceeding where B.T.'s right to counsel was violated and where the Department's evidence was not subjected to the rigors of cross-examination in an adversarial process.

The Department's argument that the child's need for permanence through an expedited process was paramount was rendered meaningless when the prolonged delay in appointing counsel exacerbated the delay in the proceedings. More than a year after B.T. first requested counsel, the referring court finally appointed counsel for the *de novo* hearing, which unlike the trial on the merits, was limited in scope by statute. The appointment of counsel occurred only after the *de novo* hearing had already commenced. Commencing the *de novo* hearing anew with B.T. having court-appointed counsel did not cure the error caused by the trial court in denying B.T. appointed counsel for the entire trial on the merits—a critical stage of the termination proceedings. In fact, the referring court's announcement that it had read and would be considering the cold record from the trial on the merits compounded the error. The evidence from the trial on the merits was not subjected to effective cross-examination putting in issue its reliability as support for permanently severing the parent-child relationship.

The heightened standard of review that applies to termination proceedings is rendered meaningless when a parent is left without legal representation at a critical stage

16

of the proceedings. A delayed appointment of counsel for an indigent parent who opposes a government-initiated termination and requests counsel may "render the ultimate appointment a toothless exercise." *In re V.L.B.*, 445 S.W.3d at 807. As such, we find the trial court's denial of court-appointed counsel to represent B.T. during the trial on the merits constitutes reversible error.

Generally, finding error requires a harm analysis under Rule 44.1(a)(1). TEX. R. APP. P. 44.1(a)(1). *See also In re E.A.G.*, 373 S.W.3d 129, 144 (Tex. App.—San Antonio 2012, pet. denied) (applying Rule 44.1(a) to a trial court's erroneous ruling on admission of expert testimony); *In re S.P.*, 168 S.W.3d 197, 210 (Tex. App.—Dallas 2005, no pet.) (finding that an erroneous evidentiary ruling caused the rendition of an improper judgment). However, a violation of the statutory scheme mandated by section 107.013(a) of the Family Code presumes that a parent was prejudiced. *See In re A.J.*, 559 S.W.3d 713, 722 (Tex. App.—Tyler 2018, no pet.) (citation omitted). Therefore, this court need not conduct a harm analysis under Rule 44.1(a). Issue two is sustained. Our disposition pretermits consideration of issue one. TEX. R. APP. P. 47.1.

#### CONCLUSION

The trial court's *Order of Termination* is reversed and the cause is remanded to the trial court for further proceedings. Any retrial of this case must commence no later than 180 days after this court issues mandate. TEX. R. APP. P. 28.4(c).


Patrick A. Pirtle
Justice

17