**AFFIRM; and Opinion Filed May 24, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01127-CV

## IN THE INTEREST OF R.M., A CHILD

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-02593-2018**

# MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen
Opinion by Justice Brown

Mother appeals the dismissal of her petition for bill of review challenging the 2016 termination of her parental rights to R.M., a minor, for lack of jurisdiction under Texas Family Code section 161.211(a). *See* TEX. FAM. CODE ANN. § 161.211(a). In two issues, Mother contends (1) section 161.211(a) is unconstitutional as applied to her, and (2) the trial court erred in granting a petition in intervention filed by J.I. and S.I., R.M.'s adoptive parents (Intervenors). For the following reasons, we affirm the trial court's order dismissing Mother's petition for bill of review.

BACKGROUND

R.M. was born on December 10, 2010. In March 2014, the Collin County Unit of the Texas Department of Family and Protective Services (Department) filed an original petition in suit affecting the parent-child relationship, and R.M. was removed from Mother's care. The Department was appointed temporary managing conservator, but shortly thereafter R.M. was placed with Intervenors, who were R.M.'s fictive kin.

On August 27, 2015, the Department and Mother reached a partial mediated settlement agreement (PMSA), agreeing Mother's parental rights to R.M. shall be terminated in the child's best interest and on the basis that Mother will have signed an affidavit of voluntary relinquishment of parental rights. The PMSA provided that Mother have weekly access to R.M. until entry of a final order and, after entry of a final order, twelve supervised visits per year.[1] Intervenors were not party to the PMSA, but it referred to them and provided:

> Nothing herein prevents [Intervenors] from increasing the number of hours of access that Mother can exercise with the child.

> ***

> [Intervenors] represent they are willing to maintain contact with, and are open to additional visits with Mother as they deem appropriate and in the best interest of the child.

The PMSA also provided that, in the event Intervenors adopted R.M., all of the PMSA's provisions were to be incorporated into the Decree of Adoption, and, for that reason, the Department agreed to ensure that Mother's attorney, Karen Arias, receive copies of all pleadings and orders related to the adoption. Mother executed an affidavit voluntarily relinquishing her parental rights in conjunction with the PSMA.

Mother and her attorney subsequently attended a trial court hearing to prove up the PMSA and affidavit, and Mother agreed to the terms of a final termination order. On October 7, 2016, the trial court entered a final order terminating Mother's parental rights.[2] The final order

---

[1] The PMSA also described conduct that could result in limitation or termination of Mother's contact:

In the event Mother misses two (2) consecutive visits or four (4) visits in a twelve (12) month period, then any obligation on [Intervenors] to allow supervised access for Mother shall cease as mandatory and shall occur only at the discretion of [Intervenors.]

***

. . . If Mother brings anyone to the visit who is not pre-approved, [Intervenors] shall be entitled to deny access to Mother.

[2] The final order also terminated the parental rights of R.M.'s biological father, who also executed a partial mediated settlement agreement and voluntary affidavit of relinquishment of parental rights. He is not party to this appeal.

incorporated the PMSA's provisions. The final order also reflected the trial court found by clear and convincing evidence that Mother executed an unrevoked or irrevocable affidavit of parental rights as provided by family code chapter 161 and termination was in the best interest of the child.[3]

Ten months later, on August 4, 2017, Intervenors adopted R.M. The adoption order is not in the record, but Intervenors' pleadings indicate the order did not incorporate the PMSA's visitation provisions. In an affidavit for limited purpose, Mother's attorney averred that she had not received copies of all pleadings and orders related to the adoption.

After the adoption, Intervenors limited Mother's visitations. Mother's brief states that Intervenors allowed visitation until March 2018, but a copy of a text message from S.I. attached to Mother's petition indicated Intervenors reduced visits once the adoption was final because the visits "trigger[ed] things for [R.M.] and cause[d] him to be an emotional roller-coaster for days after the visits." S.I. further explained the Department had told Intervenors the visits were to occur only while the Department was R.M.'s guardian and would cease, unless Intervenors decided differently, once the adoption was final.

On May 29, 2018, Mother filed a petition for bill of review, naming the Department, R.M.'s attorney ad litem, the Court Appointed Special Advocates of Collin County (CASA), and R.M.'s birth father as respondents. Mother requested the trial court to declare her affidavit void and to set aside the final order because she had executed the affidavit involuntarily due to the Department's wrongdoing. Specifically, she complained she was intentionally induced into executing the PMSA and affidavit by the Department's misrepresentations. She further alleged the Department had no intention of honoring its obligations and knew or should have known Mother would have no legal right to enforce the final order after the adoption.

---

[3] *See* FAM. § 161.001(b)(1)(K), (b)(2).

Intervenors filed a petition in intervention along with a plea to the jurisdiction asserting the trial court lacked jurisdiction under section 161.211(a) because Mother filed her petition for bill of review more than six months after entry of the final termination order. The Department and R.M.'s attorney ad litem also sought dismissal of Mother's petition under section 161.211(a).[4] Following a hearing, the trial court granted Intervenors' petition in intervention and plea to the jurisdiction and dismissed Mother's petition for bill of review with prejudice.

PLEA TO THE JURISDICTION

Mother filed her petition for bill of review challenging the termination more than eighteen months after entry of the final order. Accordingly, the petition was untimely under section 161.211, which provides:

> Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who has been personally served or who has executed an affidavit of relinquishment of parental rights or an affidavit of waiver of interest in a child or whose rights have been terminated under Section 161.002(b) is not subject to collateral or direct attack after the sixth month after the date the order was signed.

FAM. § 161.211(a). Mother nevertheless contends section 161.211(a), as applied to her, is unconstitutional because she "first became aware of the fraud, duress, or coercion in her execution of the affidavit" after section 161.211(a)'s six-month period elapsed.

*Preservation of Error*

The Department and Intervenors maintain Mother neither preserved her constitutional challenge in the trial court nor adequately briefed her argument that a due process right was violated. To preserve a constitutional claim for appellate review, a party must raise the issue in the trial court. TEX. R. APP. P. 33.1; *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003) (for appellate review, party must present arguments, including constitutional arguments, to trial court by timely

---

[4] Neither CASA nor R.M.'s biological father filed a response to Mother's petition for bill of review.

request, motion, or objection, state specific grounds therefor, and obtain ruling). Although Mother did not identify her constitutional challenge as an "as applied" challenge in the trial court, she argued that a section 161.211(a) dismissal would violate her due process rights under the facts presented in this case. The trial court granted Intervenors' plea to the jurisdiction, rejecting Mother's argument. Accordingly, we conclude Mother sufficiently preserved error for this appeal. With respect to Mother's appellate brief, we agree it focuses on the harm she alleges resulted from applying section 161.211(a) without clearly setting out how its application constituted a violation of her constitutional rights. An appellant who fails to adequately brief an issue waives that issue. *See* TEX. R. APP. P. 38.1(i) (requiring appellate briefs to "contain a clear and concise argument for the contentions made"). However, Mother's brief refers to the State's requirement to observe fundamentally fair procedures and cites authority analyzing the procedural component of due process. Thus, we construe her brief to complain of a lack of procedural due process and address the merits of her issue. *See, e.g., In re G.C.*, 66 S.W.3d 517, 524–25 (Tex. App.—Fort Worth 2002, no pet.).

*Applicable Law*

A party may challenge a trial court's subject matter jurisdiction with a plea to the jurisdiction. *See, e.g., City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Id.*; *see also In re D.K.M.*, 242 S.W.3d 863, 865 n.1 (Tex. App.—Austin 2007, no pet.) (motion to dismiss based on lack of subject matter jurisdiction is functional equivalent of plea to jurisdiction and is reviewed de novo). We accept the allegations in the petition as true and construe them in favor of the pleader. *See In re A.M.*, 312 S.W.3d 76, 81 (Tex. App.—San Antonio 2010, pet. denied). We also may consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.*

We review the constitutionality of a statute de novo. *See, e.g., In re C.P.J.*, 129 S.W.3d 573, 576 (Tex. App.—Dallas 2003, pet. denied). A claim that a statute is unconstitutional as applied is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant. *See, e.g., In re D.J.R.*, 319 S.W.3d 759, 765 (Tex. App.—El Paso 2010, pet. denied). An as-applied challenger is required to demonstrate that the statute operates unconstitutionally when applied to her particular circumstances. *Id.* "Courts are to presume that a statute is constitutional and should not reach a constitutional issue unless absolutely required." *In re C.M.D.*, 287 S.W.3d 510, 515 (Tex. App.—Houston [14th Dist.] 2009, no pet); *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *accord In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003). We must decide constitutional issues narrowly based on the precise facts of the case, not speculative or hypothetical injuries. *See In re Baby Girl S.*, 407 S.W.3d 904, 911 (Tex. App.—Dallas 2013, pet. denied).

Parents have a fundamental liberty interest "in the care, custody, and management of their child," *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982), and are entitled to procedural due process in a termination proceeding. *See Martinez v. Tex. Dep't of Protective & Regulatory Servs.*, 116 S.W.3d 266, 271 (Tex. App.—El Paso 2003, pet. denied). At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004). The process due in any given situation is measured by a flexible standard that depends on the practical requirements of the circumstances. *Mathews*, 424 U.S. at 334; *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). This standard requires a court to "weigh three factors – the private interests at stake, the government's interest in the proceeding, and the risk of erroneous deprivation of parental rights – and balance the net result against the presumption that our procedural rule comports with constitutional due process

requirements." *Mathews*, 424 U.S. at 334–35; *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003); *In re B.L.D.*, 113 S.W.3d at 352. Even when a parent's due process rights have been violated, the trial court has discretion to deny relief if the parent unreasonably failed to act and granting relief would impair another party's substantial reliance interest. *In re E.R.*, 385 S.W.3d 552, 568–69 (Tex. 2012) (citing *Rothstein v. Lutheran Social Servs.*, 405 U.S. 1051 (1972)).

*Analysis*

Mother contends she was induced into signing the PMSA, which resulted in relinquishment of her parental rights, by the Department's representations regarding her access to R.M. after entry of the final order. She alleges the Department and Intervenors "continued to perpetrate a fraud on [Mother] to ensure that she would not act to timely assert her constitutional parental rights to the child" and applying section 161.211(a) "rewards them for committing fraud while depriving [Mother], and more importantly, the child, of any procedural safeguards for [Mother's] parental rights, and for the child's constitutional relationship with [Mother]."

Mother's brief does not analyze or address the pertinent balancing factors, but we do so now to determine the due process owed to Mother in this case. First, a parent's right to raise her child is "an interest more precious than any property right," and the private interest in a parental termination case is "a commanding one." *See In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002) (quoting *Santosky*, 455 U.S. at 758–59). Both the parent and the child have a substantial interest in the accuracy and justice of this decision. *In re M.S.*, 115 S.W.3d at 547. These private interests of Mother and R.M. weigh against applying section 161.211(a) in this case.

The State shares the interest in an accurate and just decision, but its foremost interest in a termination proceeding is the best interest of the child. *In Interest of K.S.L.*, 538 S.W.3d 107, 115 (Tex. 2017). "The child's best interest is inherently threatened by undue uncertainty and delay in finally determining where the child will live and who will raise her." *Id.*; FAM. § 263.307(a) ("the

prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest"). Thus, the State has an interest in providing a safe, stable, and nonviolent environment for the child and seeing a case decided expeditiously. *See In Interest of K.S.L.*, 538 S.W.3d at 115. This concern is reflected by a legislative mandate that trial court proceedings and appeals in parental-termination cases are subject to expedited procedures. *See* FAM. §§ 109.002(a-1), 263.401, 263.405(a). The State also has an interest in an economical and efficient resolution of termination cases. *In re M.S.*, 115 S.W.3d at 548 (citing *Lassiter v. Dept. of Soc. Servs.*, 452 U.S. 18, 28 (1981)).

R.M. was removed from Mother's care in 2014. He is now eight years old and has lived for several years with Intervenors, as foster parents first and adoptive parents since October 2016. There is no evidence the placement has not been a stable one. On the other hand, the text message Mother tendered with her petition for bill of review indicates her visitations had the effect of upsetting R.M. Further, Mother agreed, and the trial court found by clear and convincing evidence, termination was in R.M.'s best interests. The State's interests, and R.M.'s best interest, weigh heavily in favor of applying section 161.211(a) to avoid undue uncertainty and delay related to R.M.'s permanent placement in a safe environment.

The parent's, child's, and State's interest in a just and accurate decision dovetails with the third balancing factor, the risk of an erroneous deprivation of the private interest due to the procedures used. *In re M.S.*, 115 S.W.3d at 549. Because termination of parental rights "is traumatic, permanent, and irrevocable," any significant risk of erroneous deprivation is unacceptable. *Id*. The State has legislated a number of substantive grounds for termination, and the Department must establish by clear and convincing evidence that the parent's actions satisfy one of those grounds and that termination is in the best interest of the child. *See* FAM. § 161.001. For a termination based on a parent's execution of an unrevoked or irrevocable affidavit of

relinquishment, as in this case, the State has legislated procedural safeguards to ensure the affidavit is voluntarily executed.[5]  *Id*. § 161.103.

Here, Mother had notice of and participated in the underlying termination proceedings. She was represented by counsel.  In the PMSA, she and the Department agreed, among other things, to limited visitation with R.M. after entry of the final order.  And, the family code authorizes a trial court to provide for limited post-termination contact between a child and a biological parent who filed an affidavit of voluntary relinquishment in an order terminating the parent-child relationship.  *See* FAM. § 161.2061(a).  An order under section 161.2061, however, does not (1) affect the finality of a termination order, or (2) grant standing to the parent whose parental rights have been terminated to file any action other than a motion to enforce the limited post-termination contact terms until the court renders a subsequent adoption order with respect to the child.  *See id*. § 161.2061(f).  Further, the family code prohibits an affidavit of voluntary relinquishment of parental rights from containing terms for limited post-termination contact as a condition of the relinquishment of parental rights.[6]  *See id*. § 161.103(h); *In re K.M.L.*, 443 S.W.3d 101, 115 (Tex. 2014).

Mother generally refers to "material misrepresentations" made by the Department to induce her into signing the PMSA and resulting in relinquishment of her parental rights, but the record contains no evidence regarding the Department's representations to Mother before she executed the PMSA and her affidavit.[7]  Nor do we know what Mother's attorney advised regarding those

---

[5] Among other requirements, an affidavit of voluntary relinquishment must be witnessed by two credible persons and verified before a person authorized to take oaths and must contain an allegation that termination of the parent-child relationship is in the best interest of the child, a statement that the parent has been informed of parental rights and duties, a statement that the relinquishment is revocable, irrevocable, or irrevocable for a stated period of time and, if revocable, a statement in boldfaced type concerning the parent's right to revoke only if the revocation is made before the eleventh day after the date the affidavit is executed.  *See* FAM. § 161.103(a)─(f).

[6] Mother's affidavit is not included in the record.

[7] Mother asserts in her brief that any deficiency in the record to affirmatively demonstrate that she was harmed by application of section 161.211(a) is "a result of the trial court's refusal to allow [her] to proceed with making her prima facie case in support" of her petition for bill of review.  The record shows Mother made an offer of proof with respect to the substance of her bill of review, but she never requested to put on any evidence to support her argument that her due process rights were violated.

provisions or Mother's reason(s) for executing those documents. Nothing in the record indicates that Mother or her attorney were unaware that section 161.2061(a) limited Mother's ability to challenge the final order. *See In re C.H.C.*, 396 S.W.3d 33, 43–44 (Tex. App.—Dallas 2013, no pet.) (presuming mother had knowledge of applicable family code provision in signing mediated settlement agreement). Any risk that Mother was deprived of due process was minimized by the fact that she was represented by counsel. *Compare In Interest of A.J.*, 559 S.W.3d 713, 721 (Tex. App.—Tyler 2019, no pet.) (there was significant risk of erroneous deprivation of parent-child relationship, and father was denied procedural due process when trial court failed to properly admonish him, preventing him from learning that he had right to court-appointed counsel, and therefore denying him ability to be represented by counsel at all critical stages of proceedings). Thus, we conclude the record does not show that applying section 161.211(a)'s six-month bar posed a significant risk of the erroneous deprivation of Mother's parental rights.

We must decide constitutional issues narrowly based on the precise facts before us, and not speculative or hypothetical injuries. *See In re Baby Girl S.*, 407 S.W.3d at 911. After balancing the *Mathews* factors, we conclude the interests and risks presented in this case do not rebut the presumption that application of section 161.211(a) comports with due process.

This conclusion, however, should not be read to condone the Department's actions in this case. Clearly, the Department, as it agreed to in the PMSA, should have ensured Mother's counsel had copies of all pleadings and orders related to R.M.'s adoption. And, as the Department concedes in its brief, the "most prudent practice" would be for language in the PMSA to refer to section 161.2061 and/or specify that post-termination contact is unenforceable after adoption. *Compare In re A.G.C.*, 279 S.W.3d 441, 444 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (mediated settlement agreement provided that "'PER § 161.2061' of the Family Code, Father was to have, limited, supervised visits with A.G.C. . . ."). However, under the facts presented to the

trial court, we conclude Mother did not demonstrate that section 161.211(a) operated unconstitutionally when applied to her particular circumstances. Accordingly, we overrule her first issue.

INTERVENTION

In her second issue, Mother contends the trial court should have denied Intervenors' petition in intervention because the trial court must have subject matter jurisdiction over any claims for relief asserted by Intervenors and, in this case, Intervenors specifically assert the trial court lacked subject matter jurisdiction. Mother further claims Intervenors failed to show they could have brought all or part of the same suit or would have been able to defeat all or part of the record if suit were brought against them.

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. When an intervention is challenged by a party's motion to strike, the intervenor bears the burden to demonstrate a justiciable interest in the pending suit. *In re Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008). "A party has a justiciable interest in a lawsuit, and thus a right to intervene, when his interests will be affected by the litigation." *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.).

We review a trial court's ruling on a motion to strike a plea in intervention for abuse of discretion. *Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 630 (Tex. App.—Dallas 2013, pet. denied). If a trial court abuses its discretion, reversal is appropriate only if the error was harmful, meaning it probably resulted in an improper judgment. *See* TEX. R. APP. P. 44.1; *Jabri v. Alsayyed*, 145 S.W.3d 660, 672 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (error in failing to strike intervention was harmless).

To preserve error for appellate review, a party must make a timely request, objection, or motion in the trial court stating the grounds for the ruling being sought; and the trial court must rule on the request, objection, or motion or the party must object to the trial court's refusal to rule. TEX. R. APP. P. 33.1; *Tate v. Andrews*, 372 S.W.3d 751, 754 (Tex. App.—Dallas 2012, no pet.). The objecting party's argument on appeal must comport with its argument in the trial court. *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.).

Mother filed no written motion to strike the petition in intervention and, during the trial court's hearing, objected to the intervention only on the basis that Intervenors lacked standing to intervene under the family code. Intervenors responded that the rules of civil procedure – and not the family code – applied to Mother's bill of review and Intervenors clearly had a justiciable interest in that the bill of review sought to undo the termination of Mother's parental rights to their adopted child. Mother did not object that Intervenors' pleadings refuted subject matter jurisdiction or to Intervenors' justiciable interest apart from whether they had standing under the family code. Because Mother did not raise these allegations of error in the trial court, she has not preserved the issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *In re M.M.W.*, 536 S.W.3d 611, 613 (Tex. App.—Texarkana 2017, no pet.); *Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App.—San Antonio 2012, no pet.). Regardless, Intervenors, as R.M.'s parents, clearly had a justiciable interest in Mother's bill of review seeking to undo termination of her parental rights. *Cf. Zeifman v. Michels*, 229 S.W.3d 460, 465 (Tex. App.—Austin 2007, no pet.) (joint managing conservator father had justiciable interest in mother's suit against school district even when he could not have brought same action because mother had right to make educational decisions related to child). Additionally, Mother cannot show she was harmed by the intervention seeking dismissal of Mother's petition on the basis of section 161.211(a) when the other respondents sought the same

–12–

relief on the same basis. *See* TEX. R. APP. P. 44.1. Because the trial court did not abuse its discretion in granting Intervenors' petition in intervention, we overrule Mother's second issue.

We affirm the trial court's order dismissing Mother's petition for bill of review.


/Ada Brown/
ADA BROWN
JUSTICE


181127F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF R.M., A CHILD

No. 05-18-01127-CV

On Appeal from the 417th Judicial District Court, Collin County, Texas
Trial Court Cause No. 417-02593-2018.
Opinion delivered by Justice Brown; Justices Schenck and Pedersen, III participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.

Judgment entered this 24th day of May 2019.