# NO. 12-18-00074-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE INTEREST OF A. J.,* | § | *APPEAL FROM THE 294TH* |
| *A CHILD* | § | *JUDICIAL DISTRICT COURT* |
|  | § | *VAN ZANDT COUNTY, TEXAS* |

## *OPINION*

J.B.J., Jr. appeals the termination of his parental rights. In two issues, he argues that he was deprived of his right to counsel and challenges the sufficiency of the evidence to support the trial court's termination order. We reverse and remand.

## BACKGROUND

J.B.J., Jr. is the father and E.C. is the mother of A.J.[1] On April 22, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of A.J., for conservatorship, and for termination of J.B.J., Jr. and E.C.'s parental rights. The Department was appointed temporary managing conservator of the child, and E.C. was appointed temporary possessory conservator with limited rights and duties.

At the conclusion of the trial on the merits, the trial court found that J.B.J., Jr. is and hereby adjudicated to be the father of A.J. The trial court also found, by clear and convincing evidence, that J.B.J., Jr. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (N), (O), and (Q) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between

---

[1] The trial court found, by clear and convincing evidence, that the mother, E.C., executed an unrevoked or irrevocable affidavit of relinquishment of parental rights to A.J. Further, the trial court found that termination of the parent-child relationship between E.C. and A.J. was in the child's best interest. Therefore, the trial court ordered that the parent-child relationship between E.C. and A.J. be terminated. The mother is not a party to this appeal.

J.B.J., Jr. and A.J. was in the child's best interest.  Based on these findings, the trial court ordered that the parent-child relationship between J.B.J., Jr. and A.J. be terminated.  This appeal followed.

**APPOINTMENT OF COUNSEL**

In his first issue, J.B.J., Jr. argues that the trial court committed reversible error by failing to advise him of his right to court-appointed counsel, to bring him before the court prior to the final hearing, and to appoint him an attorney until the case was nine days short of the dismissal deadline.

**Applicable Law**

In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination.  *See* TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2017). Further, the Texas Family Code requires the court to advise a parent of his right to be represented by an attorney during a parental termination case.  Before commencement of the full adversary hearing, the court must inform each parent not represented by an attorney of: (1) the right to be represented by an attorney; and (2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney.  *Id.* § 262.201(c) (West Supp. 2017).  Further, at the status hearing and at each permanency hearing held after the date the court renders a temporary order appointing the department as temporary managing conservator of a child, the court shall inform each parent not represented by an attorney of: (1) the right to be represented by an attorney; and (2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney.  *Id.* § 263.0061(a) (West 2014).

**Evidence**

The evidence at trial showed that at the time of the adversary hearing, J.B.J., Jr. was in jail and was served with the Department's petition on that date.  On May 9, 2016, he was convicted of the offense of manufacture or delivery of a controlled substance, a first degree felony.  The trial court assessed his punishment at five years of imprisonment and a $1,000.00 fine.  From the adversary hearing on April 28, 2016 to the June 8, 2017 permanency hearing, the orders noted that J.B.J., Jr., "although duly and properly notified, did not appear and wholly made default."  He was incarcerated throughout the case.  On March 23, 2017, the trial court ordered that the suit be retained on the court's docket and that the new dismissal date be October 21, 2017.  On October

2

12, 2017, the trial court held a final hearing on the case. However, the Department informed the trial court that it had received a letter from J.B.J., Jr. on October 4, 2017. In that letter, J.B.J., Jr. stated that he did not want to relinquish his parental rights to A.J. and he requested a family lawyer to assist him. The trial court decided to proceed to trial and the Department called one witness to testify, an investigator for the Department. Then, the trial court continued the case and appointed an attorney for J.B.J., Jr.

On January 25, 2018, the trial reconvened with J.B.J., Jr. represented by counsel. J.B.J., Jr. admitted that he received approximately eight notifications of hearings in the case. The caseworker stated that he sent J.B.J., Jr. notices of all court hearings. At one point, J.B.J., Jr. testified, he contacted the prison's law librarian and was told that it was the Department's responsibility to bench warrant him to court or arrange transportation to attend court hearings. Nonetheless, he stated that he wrote his caseworker, asking the caseworker to "come get [him]." According to J.B.J., Jr., he "wrote and wrote" the Department regarding his case. The caseworker acknowledged that J.B.J., Jr.'s father led him to believe that his father had an attorney representing him. He told J.B.J., Jr. that he had been misinformed. At that point, he said, J.B.J., Jr. wrote the October 2017 letter.

**Analysis**

In this case, J.B.J., Jr. was incarcerated throughout the case and was never informed of his right to be represented by an attorney or his right to a court-appointed attorney if he was found to be indigent. *See* TEX. FAM. CODE ANN. §§ 107.013(a)(1), 262.201(c), 263.0061(a). Further, the final trial of this case began without J.B.J., Jr. present and a witness testified without being cross-examined by J.B.J., Jr. However, the Department argues that J.B.J., Jr. failed to preserve his complaints for appellate review. The Department contends that J.B.J., Jr. did not object before or during trial to the timing of the appointment of his trial counsel. We disagree.

In *Marin v. State*, the court of criminal appeals stated that a defendant must expressly relinquish certain rights and that these rights cannot be extinguished by inaction alone. *See Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993). The right to the assistance of counsel is one of these rights. *Id.* at 279. Instead, the State must obtain the defendant's permission by express waiver or the "intentional relinquishment or abandonment of a known right or privilege." *Id*. This "waivable right" is never deemed to have been waived unless the defendant says so plainly, freely, and intelligently, sometimes in writing and always on the record. *Id.* at 280.

Because some courts have recognized that in certain contexts termination suits are quasi-criminal, we determine that the right of assistance of counsel cannot be waived. *In re B.L.D.*, 56 S.W.3d 203, 211–12 (Tex. App.—Waco 2001) (*rev'd on other grounds*, 113 S.W.3d 340, 342–43 (Tex. 2003)) (noting that statutory right to counsel in termination proceedings includes a due process right that counsel be effective); *In re J.M.S.*, 43 S.W.3d 60, 63 n. 1 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (arguing by analogy in termination case that certain other family law proceedings are quasi-criminal in nature); *In the Matter of the Marriage of Hill*, 893 S.W.2d 753, 755–56 (Tex. App.—Amarillo 1995, writ denied) (likening the procedural issues in parental termination cases to those of criminal cases as both implicate constitutional concerns); *see also Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 135 (Tex. App.—El Paso 1997, no writ) (quoting approvingly of *Hill*). Thus, J.B.J., Jr. did not waive his right to assistance of counsel.

Next, we must determine whether delaying the appointment of counsel until after the commencement of the final trial constitutes reversible error. In *In re V.L.B.*, the circumstances were similar to the facts of this case. *See In re V.L.B.*, 445 S.W.3d 802 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In that case, the parent filed an affidavit of indigence a week before trial. *Id.* at 803. However, the court began the trial without appointing counsel for the parent and allowed the Department to proceed with two witnesses before calling the parent to testify without counsel. *Id.* at 803-04. The court continued the case and appointed counsel for the parent. *Id.* at 805. The court of appeals noted that Section 107.013 does not specify the time by which an indigent parent requesting representation must receive it. *Id.* at 807. But, according to the court, the following section, which delineates the powers and duties of an attorney ad litem for a parent, sheds some light on the issue. *See id.;* TEX. FAM. CODE ANN. § 107.0131 (West 2014). Within a reasonable time after the appointment, the attorney ad litem must:

- interview the parent, each person with knowledge of the case, and the parties to the suit;
- investigate the facts of the case;
- obtain and review copies of all court files and conduct discovery as necessary "to ensure competent representation at hearings, mediations, pretrial matters, and the trial on the merits;" and
- meet with the parent before each court hearing and abide by the parent's objectives for representation.

*Id.* § 107.0131(a)(1). The parent's attorney ad litem is entitled to:

4

- request a hearing or trial on the merits;
- consent or refuse to consent to an interview of the parent by another attorney;
- receive a copy of each pleading or other paper filed with the court;
- receive notice of each hearing in the suit;
- participate in any case staffing conducted by the Department in which the parent is invited to participate; and
- attend all legal proceedings in the suit.

*Id.* § 107.0131(a)(2). Moreover, an attorney ad litem appointed for a parent under Chapter 107 who fails to perform the duties required by Section 107.0131 is subject to disciplinary action. *See id.* § 107.0133 (West 2014). These expansive duties are commensurate with the seriousness of the rights at stake. *See In re V.L.B.*, 445 S.W.3d at 807.

Considering the mandatory nature of the appointment of counsel upon a finding of indigency, and the appointed attorney's specific obligations in connection with representing an indigent parent, a trial court should address a parent's affidavit of indigence as soon as possible— before the next critical stage of the proceedings, whether it be a hearing, a mediation, a pretrial conference, or, in particular, a trial on the merits, and allow a reasonable time for appointed counsel to make necessary preparations. *See id.*; TEX. FAM. CODE ANN. §§ 107.0131, 107.133. When an indigent parent seeks representation before a critical stage of the proceedings, and the trial court nonetheless proceeds with that stage, the delay may render the ultimate appointment a "toothless exercise and irreparably impair the parent's ability to defend the case or regain custody of the child." *See In re V.L.B.*, 445 S.W.3d at 807.

Further, before the commencement of the full adversary hearing, the trial court must inform each parent not represented by an attorney of the right to be represented by an attorney and if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney. *See* TEX. FAM. CODE ANN. § 262.201(c). Justice Lehrmann, in a concurring opinion, noted that "[w]ithout the right to admonishment, many indigent parents whose parental rights are in peril face a no-win situation: they have a statutory right to counsel if they follow the proper procedures to establish their indigence, but they have no right to be admonished of their right to counsel upon a finding of indigence and thus no way of ensuring they follow the required procedures to exercise it." *See In re K.M.L.*, 443 S.W.3d 101, 123 (Tex. 2014) (Lehrmann, J., concurring).

In this case, J.B.J., Jr. was never statutorily admonished of his right to counsel or timely appointed counsel before trial. The commencement of trial on October 12, 2017, was a critical

stage of the termination proceedings, at which the indigent father was not represented by counsel. Thus, J.B.J., Jr. contends that he was denied procedural due process by the trial court's failure to advise him of his right to counsel prior to the beginning of his trial. In analyzing a claim of deprivation of procedural due process, we apply a two-part test: (1) whether the complaining party has a liberty or property interest entitled to protection; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 1153–54, 71 L. Ed. 2d 265 (1982); *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S. Ct. 780, 785, 28 L. Ed. 2d 113 (1971).

Parents have a fundamental liberty interest "in the care, custody, and management of their child." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394–95, 71 L. Ed. 2d 599 (1982). Moreover, status as a prison inmate does not strip a person of his constitutional right of reasonable access to the courts. *In re T.L.B.*, No. 07–07–0349–CV, 2008 WL 5245905, at *2 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.) (citing *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S. Ct. 3194, 3198, 82 L. Ed. 2d 393 (1984)). Therefore, here, J.B.J., Jr. was entitled to procedural due process in the termination proceeding. *See In re R.M.T.*, 352 S.W.3d 12, 17 (Tex. App.—Texarkana 2011, no pet.); *Martinez v. Tex. Dep't of Protective & Regulatory Servs.*, 116 S.W.3d 266, 271 (Tex. App.—El Paso 2003, pet. denied).

At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). What process is due in any given situation is measured by a flexible standard that depends on the practical requirements of the circumstances. *Id.*, 424 U.S. at 334, 96 S. Ct. at 902. To assess what process J.B.J., Jr. was due, we weigh the three factors developed by the United States Supreme Court in *Eldridge*: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of the private interest due to the procedures used. *In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) (citing *Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903). Courts must weigh these factors to determine whether the fundamental requirements of due process have been met by affording an opportunity to be heard at a meaningful time and in a

6

meaningful manner under the circumstances of the case. *See City of Los Angeles v. David*, 538 U.S. 715, 717, 123 S. Ct. 1895, 1896, 155 L. Ed. 2d 946 (2003).

### 1. *Private Interests Affected by the Proceeding*

Concerning the private interests affected, parental rights are "far more precious than any property right," and when the State initiates a termination proceeding, "it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1397. A parent's interest in maintaining custody of and raising his or her child is paramount. *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). For this reason, a parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one. *Id.*

The private interests of the child must also be considered. *Id.* "Both the parent and the child have a substantial interest in the accuracy and justice of a decision." *Id.* The considerations involved in this case—namely, J.B.J., Jr.'s fundamental liberty interest in maintaining custody and control of A.J., the risk of permanent loss of the parent-child relationship between them, and J.B.J., Jr.'s and A.J.'s interest in a just and accurate decision—weigh heavily in favor of providing J.B.J., Jr. with an attorney before commencement of the termination trial and admonishment of his right to counsel at the statutorily mandated time. *See id.* at 548.

### 2. *The State's Interest in the Proceeding*

The State's interest in the proceeding includes protecting the best interest of the child, an interest which is "served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home." *Id.* at 548–49; *see also In re B.L.D.*, 113 S.W.3d at 353 (noting that the State's "parens patriae interest in promoting the welfare of the child" aligns with the parent's interest in a just and accurate decision). The State also has an interest in an accelerated timetable and a final decision that is not "unduly prolonged" with negative psychological effects on the children left in limbo. *See In re M.S.*, 115 S.W.3d at 548; *see also In re B.L.D.*, 113 S.W.3d at 353. The family code's entire statutory scheme for protecting children's welfare focuses on the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 304 (Tex. 2002) (Schneider, J., dissenting). And, like their parents, children have an interest in an accurate resolution and just decision in termination cases. *See id.* But children also have a strong interest in a final decision on termination so that adoption to a stable home or return to the parents is not unduly prolonged. *See id.*

The record shows that the Department was appointed as temporary managing conservator of A.J. on April 28, 2016, during the full adversary hearing. The termination trial did not commence until October 12, 2017. Advising J.B.J., Jr. of his statutory rights to be represented by counsel before commencement of the trial would not "unduly prolong[]" the family code's statutory scheme for protecting children's welfare. *See In re J.F.C.*, 96 S.W.3d at 304. Thus, we give less weight to the Department's interest in this case to achieve an expeditious resolution than we give to the private parties' interests. *See In re M.S.*, 115 S.W.3d at 548.

### 3. Risk of Erroneous Deprivation of Parent–Child Relationship

"The parent's, child's, and government's interest in a just and accurate decision dovetails with the third *Eldridge* factor—that of the risk of erroneous deprivation" of the parent-child relationship as a result of the procedure that was followed. *Id.* at 549; *see also In re R.M.T.*, 352 S.W.3d at 22. The Department contends that J.B.J., Jr. was appointed an attorney when he requested one, that he made no suggestion that his counsel's representation was inadequate, and that his counsel was provided three and one-half months to prepare for trial and announced "ready." However, we note that despite his representation by counsel at the second half of the termination trial, J.B.J., Jr. was effectively without representation during the almost eighteen months of the case. The trial court failed to properly admonish him and prevented him from learning that he had a right to court-appointed counsel if he were proven to be indigent. He was prevented from asserting this right. Therefore, he was denied the ability to be represented by counsel at all critical stages of the proceedings. *See In re V.L.B.*, 445 S.W.3d at 807. We conclude that, under the third *Eldridge* factor, there was a significant risk of erroneous deprivation of the parent-child relationship between J.B.J., Jr. and A.J. Balancing the three *Eldridge* factors, we hold that J.B.J., Jr. was denied procedural due process. In short, he was denied a meaningful opportunity to participate in the proceedings.

## Harm Analysis

We now turn to whether the denial of procedural due process to J.B.J., Jr. was harmful error. To obtain reversal of a judgment based on trial court error, an appellant must show that the error probably caused rendition of an improper judgment. TEX. R. APP. P. 44.1(a); s*ee In re B.L.D.*, 113 S.W.3d at 351 (declining to apply the criminal fundamental-error doctrine to parental rights termination cases); *see also In re E.A.G.*, 373 S.W.3d 129, 144 (Tex. App.—San Antonio 2012, pet. denied) (applying Rule 44.1 in termination case); *In re S.P.*, 168 S.W.3d 197, 210 (Tex.

8

App.—Dallas 2005, no pet.) (same); *In re J.M.*, No. 12-11-00319-CV, 2013 WL 5657422, at *2 (Tex. App.—Tyler Oct. 16, 2013, pet. denied) (mem. op.) (same).

Although we apply the civil standard for reversible error, we also recognize that termination suits are considered quasi-criminal in nature and thus, the criminal standard regarding a harm analysis of procedural due process is instructive. *See In re B.L.D.*, 56 S.W.3d at 211–12; *In re J.M.S.*, 43 S.W.3d at 63 n.1. In *Williams v. State*, the court of criminal appeals stated that the application of a harm analysis is dependent on the type of error or violation at issue. *See Williams v. State*, 252 S.W.3d 353, 358 (Tex. Crim. App. 2008). In that case, the defendant's waiver was not made knowingly, intelligently, and voluntarily because the trial court failed to inquire into the defendant's indigent status and admonish the defendant about her right to appointed counsel. *Id.* Thus, the court of appeals determined that the defendant's waiver was invalid. *Id.* The court of criminal appeals stated that an invalid waiver waives nothing; therefore, the defendant's right to counsel remained intact. *Id.* As a result, the defendant was entitled to be represented by counsel during her trial. *Id.* The court of criminal appeals concluded that the defendant's trial was rendered fundamentally unfair and unreliable because she was denied the right to appointed counsel. *Id.* at 359.

Here, J.B.J., Jr. was also denied the right to appointed counsel, did not waive his right to counsel, and was effectively denied any method of meaningful participation at any of the critical stages of the case or at the beginning of the trial. The application of a harmless error analysis is therefore not appropriate; prejudice is presumed. *See id.* Because J.B.J., Jr.'s right to appointed trial counsel was violated, a court cannot, with any accuracy, predict what would have occurred in the absence of the violation. *See id.* The court of criminal appeals also stated that "[t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel...." *Id.* Thus, there is simply no way to discern what the outcome would have been had J.B.J., Jr. been represented by counsel. *See id.* Accordingly, we hold that the denial of procedural due process in this case probably caused rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a). We sustain J.B.J., Jr.'s first issue. Because this issue is dispositive, we need not address his second issue. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

For the reasons set forth above, we conclude that J.B.J., Jr. was denied procedural due process. We therefore ***reverse*** the order of termination and ***remand*** the case for further proceedings consistent with this opinion.

**BRIAN HOYLE**
Justice

Opinion delivered September 10, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 10, 2018

### NO. 12-18-00074-CV

### IN THE INTEREST OF A. J., A CHILD

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. 16-00109)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*