# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00502-CV

---

### A. G., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

**FROM THE 340TH DISTRICT COURT OF TOM GREEN COUNTY**
**NO. C210047CPS, THE HONORABLE ELIZABETH WATKINS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant A.G. (Mother) appeals from the trial court's order, following a bench trial, terminating her parental rights to her child E.G., born May 13, 2021 (Daughter).[1]  In a single issue on appeal, Mother argues that the district court erred in failing to adequately admonish her of her right to court-appointed counsel.  We will affirm the order of termination.

## BACKGROUND

The case began in May 2021, when the Texas Department of Family and Protective Services (the Department) received a report that Mother had given birth to a newborn and had tested positive for marijuana.  In the Department's removal affidavit, Department investigator Tredean Williams averred that he made contact with Mother in a hospital room with

---

[1]  For the child's privacy, we refer to her and her parents by their initials and by their familial relationships to each other.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

a police guard.  Mother informed Williams that she had been jailed in April 2021 for theft, that she would be going to prison for six months, and that "she used meth about a month ago and she smoked marijuana about fifteen days ago."  Mother also stated that "this is her fourth time having to deal with CPS," that her three other children "were taken away due to marijuana," and that "she had methamphetamines in her system" when she had her third child.  Mother provided Williams with the name of Daughter's alleged father, M.O., but Williams was unable to speak to him because he was currently in jail.  Due to Mother's drug use while she was pregnant with Daughter, her incarceration, and the removal of Mother's other children due to her drug use, the Department sought and obtained emergency removal of Daughter from Mother.  In its Order for Protection of a Child in an Emergency and Notice of Hearing, the trial court found:

> that appointment of an attorney ad litem for the Respondents may be mandatory under § 107.013, Texas Family Code.  IT IS ORDERED that Respondents appear at the adversary hearing with all pertinent information, including an affidavit of indigence as mandated in § 107.013(d), Texas Family Code, regarding their income.  Upon a showing of indigency and opposition to the suit affecting the parent-child relationship a licensed attorney at law of this state will be appointed to represent the Respondents.

The order also included the following "Notice to Parents":

> **YOU HAVE THE RIGHT UNDER §262.102(d), TEXAS FAMILY CODE, TO BE REPRESENTED BY AN ATTORNEY.  IF YOU ARE INDIGENT AND UNABLE TO AFFORD AN ATTORNEY, YOU HAVE THE RIGHT TO REQUEST THE APPOINTMENT OF AN ATTORNEY BY CONTACTING THE COURT AT 340TH JUDICIAL DISTRICT COURT OF TOM GREEN COUNTY, 112 W. BEAUREGARD, SAN ANGELO, TEXAS 76903, (325) 659-6579.  IF YOU APPEAR IN OPPOSITION TO THE SUIT, CLAIM INDIGENCE, AND REQUEST THE APPOINTMENT OF AN ATTORNEY, THE COURT WILL REQUIRE YOU TO SIGN AN AFFIDAVIT OF INDIGENCE AND THE COURT MAY HEAR EVIDENCE TO DETERMINE IF YOU ARE INDIGENT.  IF THE COURT**

**DETERMINES YOU ARE INDIGENT AND ELIGIBLE FOR APPOINTMENT OF AN ATTORNEY, THE COURT WILL APPOINT AN ATTORNEY TO REPRESENT YOU.**

Also attached to the order was a copy of the trial court's standing orders in child protection cases, which included the following advice:

> **Respondents are advised that they have the right to retain legal counsel and that, if a Respondent parent is indigent [] and the parent responds in opposition to the Department's suit, the Respondent parent may request court-appointed legal counsel be appointed by the Court by filing with the District Clerk an affidavit of indigence form, which form may be obtained from the District Clerk, and by [] submitting to the Court such additional evidence as may be required by the Court pursuant to Section 107.013, Texas Family Code, and other applicable law, to determine the Respondent parent's indigence.**

The trial court's docket sheet reflects that at the full adversary hearing held on May 26, 2021, the Department announced that it was seeking to be continued as Temporary Managing Conservator of Daughter, for Daughter to remain in her current foster care placement while the Department checked on possible relative placements, for Mother to be appointed as a Temporary Possessory Conservator and granted visitation rights, for paternity testing to be ordered, and for Mother and M.O. to be ordered to participate in services.[2] Mother and M.O. "each indicated they were in agreement with the orders." Also at the hearing,

---

[2] The Department created a service plan for Mother, which she signed and became an order of the court. The plan included requirements that Mother: demonstrate an ability to find and maintain a stable living arrangement; demonstrate that she can obtain and maintain a legal source of income; engage in any classes offered at the county jail; participate in all programs or services offered by the state jail to which she is sent that relate to her case, such as drug treatment, sober living, parenting, counseling, and GED classes; update caseworker on the status of her criminal case; participate and engage in individual counseling until successfully discharged; submit to random drug testing as requested by the caseworker and test negative for all illegal substances; and complete a psychological evaluation.

> The Court advised the Respondent Mother and the Respondent Alleged Father of their right to retain legal counsel and advised the Respondent Mother of her right to request court-appointed legal counsel if she were opposed to the relief requested by the Department and if she could establish indigence. The Respondents did not oppose the relief requested and they did not request time to retain counsel or request court-appointed counsel.

In its temporary orders following the hearing, "The Court defer[red] its finding regarding an attorney ad litem for [Mother], because [Mother] has not appeared in opposition to this suit or has not established indigency." The orders also contained the same written admonishment noted above regarding the right to counsel that was included in the protection order, as well as a copy of the standing order noted above that advised parents regarding their right to counsel.

The trial court's docket sheet reflects that at the status hearing held on August 30, 2021,

> The Court again advised the Respondent Mother of her right to retain counsel and of her right, if she were opposed to the relief sought by the Department and if she could establish indigence, of her right to request court-appointed counsel and the procedure to do so. The Respondent Mother made no request for counsel at the hearing.

Also at that hearing, Mother identified her boyfriend, J.B., as a possible father of Daughter. Consequently, "[t]he Court directed the Department to amend its pleadings to bring him into the suit so paternity testing could be done." DNA testing later confirmed that Daughter's father was J.B. (Father).

The trial court subsequently held two permanency hearings. Mother and Father did not appear at either hearing. At the first hearing, held on November 9, 2021, according to the trial court's docket sheet,

The Court took judicial notice of the Court's file to the extent it reflected that the Court had previously advised the Respondent Mother of her right to retain counsel and of her right, if she were opposed to the relief sought by the Department and if she could establish indigence, of her right to request court-appointed counsel and the procedure to do so. The Respondent Mother has made no request for counsel to the Court and no attorney purporting to represent her has entered an appearance in the case on her behalf.

The docket sheet further noted:

The Respondent Mother, who had been incarcerated in the Tom Green County Jail, was released on 09-29-2021 and she has not maintained contact with the Department since her release and her current whereabouts are unknown. Other than completing some parenting packets while incarcerated and some services at the jail, the Respondent Mother has not completed any other services and she has not been visiting the child.

The docket-sheet entry for the second permanency hearing, held on March 8, 2022, reflects that "parents were no shows" at the hearing and that Mother and Father were "in and out of jail."

The case proceeded to a bench trial on April 13, 2022, which was conducted via Zoom. Mother and Father both appeared pro se.[3] At trial, Department caseworker Kami Bailey testified that Mother "ha[d] been incarcerated three times during this case" and had not responded to Bailey's calls, text messages, or emails. Bailey added, "I did attempt to home visit several times. One time I was able to speak with [Father], and [Mother] actually went out the back door. . . . So, I have not been able to visit with her." Bailey also testified that Mother had not seen Daughter "since she gave birth, so almost a year in May." Regarding Mother's family service plan, a copy of which was admitted into evidence, Bailey testified that Mother completed

---

[3] Although Mother could not be seen on camera at the beginning of trial, the record reflects that she was present with Father and that she began speaking when Father was asked to provide a statement.

some classes while incarcerated but failed to complete other services including regular drug testing, which Bailey identified as one of the most important aspects of Mother's service plan.

Bailey further testified that Daughter had been placed in a foster home since birth and was "doing very well" in the placement. Bailey explained, "She's very bonded with the caregivers, and also the caregivers' other children. She is placed with a biological sister that they have previously adopted; [the sister]'s now four years old. So, she's very bonded with the family." Bailey believed that all of Daughter's physical and emotional needs were being met in the home and that it was in Daughter's best interest for this placement to continue. Bailey further opined that Daughter did not have any kind of bond with either Mother or Father because she had "never met" Father and had "never seen [Mother] besides after [Mother] gave birth to her." Bailey had seen nothing to indicate that either parent would be able to provide for Daughter's physical or emotional well-being.

After Bailey testified, Father, who was also a drug user, asked for an "extension" and "a little bit of time" to "get [himself] together." Mother joined Father in asking that he be granted an extension, explaining that although she had "known about this case" since Daughter was born, Father had "just found out that this is his child" and had "no time at all to even try to bond with his child, to even try to do anything." Mother testified that she was aware Father used methamphetamine but that he was "trying to stop." Mother also testified that she had last used methamphetamine in January and that she and Father had not used methamphetamine together. After Mother testified, the trial court announced that it had heard Father's "plea for additional time" and would recess the proceedings and "resume this final hearing pending the results of" additional drug tests on Father. The trial court added, "When we resume, I will allow the parties to re-open, if necessary, based on any new drug test results or information from [Father]."

6

The trial resumed on June 29, 2022, again via Zoom. This time Mother appeared but Father did not. Bailey testified that Father took additional drug tests in April, May, and June and tested positive for drugs each time.[4] Bailey also testified that since the last hearing, Mother had been arrested on "active warrants," including on a drug possession charge. Bailey explained that Mother had been arrested following "a call for domestic violence" between Mother and Father:

> They were arguing in a park that is right across the street from their house, and somebody called the cops. So, when the cops arrived, they located [Mother] and [Father]. When they saw the cops, they ran towards the house, and the cops were able to stop them and arrest her.

Bailey further testified that Daughter was continuing to do "very well" in her current placement and was "thriving" there.

Mother did not testify, but in her closing statement, she asked that Father be given more time to "prove himself" and that she be allowed "to work for this child." Mother also stated that she had "a jury trial in November" on her pending criminal charges but that she was "not going to take it to a jury trial" and was "going to try to take the least amount of time they give [her]." However, she acknowledged, "I'm going to have to go to the penitentiary, but I have to make parole and everything. We have a drug problem. You know what I mean?"

At the conclusion of trial, the trial court found by clear and convincing evidence that Mother had: (1) knowingly placed or knowingly allowed the child to remain in conditions or

---

[4] Although Bailey did not provide specific details regarding the results of Father's drug tests, a permanency report submitted to the court stated that Father "tested positive on an oral swab on 3/11/2022 for methamphetamine and marijuana," "test[ed] positive on a hair follicle and urine analysis on 4/14/2022," "tested positive on an oral swab on 5/23/2022 for methamphetamine and marijuana" and "tested positive on an oral swab on 6/10/2022 for methamphetamine."

surroundings which endanger the physical or emotional well-being of Daughter; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of Daughter; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Daughter. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). Regarding Father, the trial court found that he knowingly placed or knowingly allowed Daughter to remain in conditions or surroundings which endanger the physical or emotional well-being of Daughter. *See id*. § 161.001(b)(1)(D). The trial court also found that termination of Mother's and Father's parental rights was in the best interest of Daughter. *See id*. § 161.001(b)(2). This appeal by Mother followed.[5]

## DISCUSSION

In her sole issue on appeal, Mother asserts that the trial court erred in failing to adequately admonish her of her right to court-appointed counsel. "In a suit filed by a governmental entity . . . in which termination of the parent-child relationship or the appointment of a conservator for a child is requested, the court shall appoint an attorney ad litem to represent the interests of an indigent parent of the child who responds in opposition to the termination or

---

[5] After the trial court announced its ruling, the trial court advised Mother that she had a right to appeal its ruling, and Mother informed the trial court that she wanted to appeal it. The trial court subsequently appointed Mother appellate counsel. Mother's court-appointed counsel filed a motion to withdraw and an *Anders* brief concluding that the appeal was frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967). However, this Court concluded that the record contained at least one non-frivolous issue for appeal, specifically, the possible denial of Mother's right to trial counsel, and we abated this appeal and remanded to the trial court for the appointment of new counsel to brief that and any other issues that new counsel determined to be meritorious. *See A.G. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00502-CV, 2022 WL 10714200, at *1 (Tex. App.—Austin Oct. 19, 2022) (per curiam order and mem. op.).

appointment." Tex. Fam. Code § 107.013(a)(1). Moreover, "if a parent is not represented by an attorney at the parent's first appearance in court, the court shall inform the parent of: (1) the right to be represented by an attorney; and (2) if the parent is indigent and appears in opposition to the suit, the right to an attorney ad litem appointed by the court." *Id*. § 107.013(a-1). This requirement applies "[b]efore commencement of the full adversary hearing," *id*. § 262.201(c), and "[a]t the status hearing and at each permanency hearing held after the date the court renders a temporary order appointing the department as temporary managing conservator of a child," *id*. § 263.0061(a); *see In re B.C.*, 592 S.W.3d 133, 137 (Tex. 2019).

In this case, the record reflects that consistent with the above statutory requirements, the trial court admonished Mother of her right to counsel at both the May 26, 2021 full adversary hearing and at the August 30, 2021 status hearing. The record further reflects that Mother did not request counsel at either hearing. Additionally, Mother failed to appear at either permanency hearing. Thus, the trial court could not admonish her of her right to counsel on those occasions. Finally, the record does not reflect that Mother requested the assistance of counsel at any point before or during trial, despite being told on multiple occasions before trial, both in person and in writing, that she had a right to counsel and that if she could establish her indigence, then she had a right to appointed counsel.[6]

---

[6] Additionally, the Texas Supreme Court has held that a trial court is required to appoint counsel for a parent "only when an affidavit of indigence has actually been filed and the trial court has determined the parent is truly indigent." *In re B.C.*, 592 S.W.3d 133, 136 (Tex. 2019). In this case, Mother never filed an affidavit of indigence, which "is a necessary prerequisite to a determination that the parent is indigent." *Id*.; *see also J.E. v. Tex. Dept. of Family & Protective Servs.*, No. 03-14-00164-CV, 2014 WL 4536569, at *8 (Tex. App.—Austin Sept. 10, 2014, no pet.) (mem. op.) ("To be entitled to court-appointed counsel, a 'parent who claims indigence . . . must file an affidavit of indigence[.]'"); *In re K.L.L.H.*, No. 06-09-00067-CV, 2010 WL 87043, at *5 (Tex. App.—Texarkana Jan. 12, 2010, pet. denied) (mem. op.) (describing parent's filing of

9

Parental rights are "perhaps the oldest of the fundamental liberty interests" protected by the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). They have been characterized as "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). Additionally, due to the magnitude of the constitutional rights at stake, proceedings to terminate parental rights are sometimes considered "quasi-criminal" in nature. *See In Interest of A.J.*, 559 S.W.3d 713, 718 (Tex. App.—Tyler 2018, no pet.); *see also In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."); *In re E.L.T.*, 93 S.W.3d 372, 377–78 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (Guzman, J., concurring) (recognizing "quasi-criminal" nature of termination proceedings in certain contexts). For these reasons, we believe that the better practice would be for the trial court to admonish a parent of her right to counsel and to ask an unrepresented parent, on the record, if she wants the assistance of counsel or is willing to forego that right, similar to the requirements for waiving the right to counsel in criminal cases. *Cf. Faretta v. California*, 422 U.S. 806, 835 (1975); *Osorio-Lopez v. State*, ___ S.W.3d ___, 2022 WL 2335394, at *4 (Tex. Crim. App. 2022); *cf. also In re C.L.S.*, 403 S.W.3d 15, 20-22 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). However, that is not what the Texas Family Code currently requires, and on this record, we cannot conclude that the trial court erred when it complied with the statutory requirements.

We overrule Mother's sole issue on appeal.

---

affidavit of indigency as "the act which would trigger the process for mandatory appointment of an attorney ad litem").

10

**CONCLUSION**

We affirm the trial court's order of termination.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   December 29, 2022