# NO. 12-22-00250-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF D.D.,* | § | *APPEAL FROM THE* |
| *A CHILD* | § | *COUNTY COURT AT LAW NO. 1* |
| | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.D., the father of the minor child D.D.,[1] appeals the trial court's order terminating his parental rights. In his sole issue, Appellant contends he was "deprived of his due process right to court-appointed counsel at meaningful stages of the case." We affirm.

## BACKGROUND

On June 29, 2021, the Department of Family and Protective Services (the Department) filed an original petition for protection of a child, for conservatorship, and for termination. In its petition, the Department asserted that Appellant is the alleged father of D.D. and sought a determination of parentage pursuant to Chapter 160 of the Texas Family Code, as well as termination of Appellant's parental rights.[2] The Department asserted that if Appellant were established as D.D.'s father, his parental rights should be terminated because, among other things, he knowingly placed or allowed D.D. to remain in conditions or surroundings that endangered her physical or emotional well-being, engaged in conduct or knowingly placed D.D. with persons who engaged in conduct that endangered her physical or emotional well-being, and failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the

---

[1] For clarity, because the child's father and the child share the same initials, we will refer to the child's father as "Appellant" in this opinion.

[2] The Department also sought termination of the parental rights of the child's mother, who did not file a notice of appeal.

child. According to the affidavit in support of removal, signed by Department caseworker Candice Roberts, the Department received a priority one report alleging "drug use in the home and a newborn being born in the home." The affidavit also indicated that when Roberts interviewed Appellant at the Henderson County jail, he told her that the child's mother "actively used methamphetamine and marijuana one week prior to his arrest[]" and that he would not be surprised if she were using drugs again.

On July 16, 2021, Appellant requested appointment of counsel to represent him. Thereafter, the Department filed a motion for genetic testing, and on July 22, the trial court signed an order for genetic testing. On July 29, the trial court conducted an adversary hearing, at which it heard testimony from Roberts and CASA representative Kathy Moreland. Roberts testified that Appellant was incarcerated for possession of methamphetamine and assault causing bodily injury. She also explained that Appellant requested a DNA test. Roberts opined that having the Department continue as D.D.'s temporary managing conservator and remaining in her foster home is in D.D.'s best interest. Moreland likewise recommended continuation of the "status quo." At the end of the adversary hearing, the trial judge approved D.D.'s placement, ordered that the Department remain as D.D.'s temporary managing conservator, and stated that he would order genetic testing.

On August 27, 2021, the trial court conducted a status hearing, at which Department caseworker Kadie Richburg and Moreland briefly testified. According to Richburg, Appellant "stated that the only reason he needed the DNA testing was so he could take it to the Indian reservation, but that he knew [D.D.] was his."

On December 10, 2021, the trial court conducted an initial permanency hearing, at which Department caseworker Kimberly Coursey testified that Appellant tested positive for methamphetamine in November. The trial court also heard testimony from Moreland, who again recommended continuation of the "status quo." Appellant briefly testified regarding potential family members with whom D.D. could be placed. After the witnesses testified, the trial judge stated, "I know – first of all, you have applied for a [c]ourt-appointed attorney. . . . I can't appoint one until you're established as the father . . . . [S]tatutorily, . . . you're not entitled to an attorney." The trial judge further stated, "we do need to get the DNA test done[.]" At the conclusion of the hearing, the trial judge maintained the Department as temporary managing conservator and

2

approved D.D.'s placement. Appellant told the trial judge, "I have written you a letter[,]" and the judge responded that he could not read the letter because it is an ex parte communication.[3]

On February 15, 2022, the Department filed a motion to adjudicate paternity, in which it asserted that DNA testing showed a 99.99% probability that Appellant is D.D.'s biological father. The trial court appointed an attorney to represent Appellant on February 17. On April 8, the trial court conducted a permanency review before final hearing, at which Appellant was represented by appointed counsel. On April 18, the trial judge signed an order adjudicating Appellant as D.D.'s father. After Appellant moved for an extension of the trial court's jurisdiction for an additional 180 days due to the existence of potential issues under the Indian Child Welfare Act (ICWA), the trial court signed an order extending the dismissal date to December 31.

On August 29, 2022, the matter proceeded to trial, following which the trial court found that Appellant knowingly placed or allowed D.D. to remain in conditions or surroundings that endangered her physical or emotional well-being, engaged in conduct or knowingly placed D.D. with persons who engaged in conduct that endangered her physical or emotional well-being, and failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of D.D. The trial court also found that termination of Appellant's parental rights is in D.D.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West 2022). The trial court signed an order terminating Appellant's parental rights on September 7, 2022. This appeal followed.

## RIGHT TO APPOINTED COUNSEL

In his sole issue, Appellant contends he was "deprived of his due process right to a court-appointed counsel at meaningful stages of the case." Specifically, Appellant asserts that the trial court denied him counsel by conducting the adversary hearing and other subsequent hearings without appointing counsel to represent him, and that it denied his request for appointed counsel "until DNA tests were completed."

### Applicable Law

In a suit by a governmental entity in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of "an indigent

---

[3] The record reflects that Appellant sent the trial court two letters, in which he opposed termination of his parental rights and referred to D.D. as his daughter.

parent" of the child who responds in opposition to the termination, an alleged father who failed to register with the paternity registry and whose identity or location is unknown, and an alleged father who registered with the paternity registry but could not be served with citation. *Id*. § 107.013(a)(1), (3), (4) (West 2019). "Parent" is statutorily defined as "the mother, a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, a man who has acknowledged his paternity under applicable law, or an adoptive mother or father."[4] *Id*. § 101.024(a) (West 2019). The Texas Family Code sets forth the requirements for an acknowledgment of paternity. *See id.* §§ 160.201(b) (west 2022) (setting forth means by which father-child relationship is established, including "an effective acknowledgment of paternity"), 160.302(a) (West 2022) (setting forth requirements for valid acknowledgment of paternity); *see also id*. § 160.312(a)(1) (West 2022) (requiring vital statistics unit to prescribe forms for acknowledgment of paternity). The Texas Family Code requires the trial court to admonish a "parent" at the first hearing at which the parent appears of (1) his right to be represented by an attorney and (2) the right to have an appointed attorney if he is indigent. *Id*. § 107.013(a-1)(1), (2) (West 2019). Additionally, the Texas Family Code requires the trial court to advise a "parent" of his right to be represented by an attorney before commencing a full adversary hearing, at each status hearing, and at each permanency hearing. *Id*. §§ 262.201(c) (West Supp. 2022), 263.0061(a) (West 2019).

**Analysis**

Appellant contends that our holding in *In re A.J.*, 559 S.W.3d 713 (Tex. App.—Tyler 2018, no pet.) is controlling. In that case, the trial court did not appoint counsel to represent the child's alleged father, J.B.J., Jr., until "the case was nine days short of the dismissal deadline" and trial had begun. *In re A.J.*, 559 S.W.3d at 716, 722. As Appellant points out, we concluded in *In re A.J.* that the risk of loss of the parent-child relationship weighs heavily in favor of providing an attorney before commencement of the termination trial and admonishment of the right to counsel at the statutorily mandated time, and we held that the trial court deprived J.B.J., Jr. of procedural due process and denied him a meaningful opportunity to participate in the proceeding. *Id.* at 720-21.

We conclude that *In re A.J.* is distinguishable from this case. In the instant case, the trial court appointed counsel to represent Appellant approximately nine months after the case was filed.

---

[4] Appellant does not argue that he is presumed to be D.D.'s father. *See* TEX. FAM. CODE ANN. § 160.204(a) (West 2022) (defining circumstances under which man is presumed to be child's father).

The trial court appointed counsel to represent Appellant within two days of receiving the Department's motion to adjudicate paternity, which was over six months before trial, and Appellant was represented by appointed counsel for all remaining proceedings, including trial.[5] Additionally, to the extent that our holding *In re A.J.* was based upon the Texas Family Code's definition of "parent" rather than "alleged father," we clarify that the Texas Family Code provisions which set forth the requirements for advising an indigent parent of his right to counsel and providing him with appointed counsel do not govern in this case because Appellant is an alleged father. Rather, the provisions regarding an alleged father apply. *See* TEX. FAM. CODE ANN. § 107.013(a)(1), (3), (4).

As discussed above, the trial court is statutorily required to appoint an attorney only for an indigent "parent," an "alleged father" who failed to register with the paternity registry and whose identity or location is unknown, or an "alleged father" who registered with the paternity registry but who could not be served with citation. *See id*. Appellant did not fit the statutory definition of "parent" until the trial court adjudicated him to be D.D.'s father; that is, he was not presumed to be D.D.'s father, he had not been legally determined to be the father, he had not been adjudicated to be D.D.'s father, and he did not acknowledge his paternity under applicable law. *See id*. § 101.024(a). Moreover, although Appellant is an alleged father, neither his identity nor his location were unknown, and the record reflects that he was served with citation and did not register with the paternity registry. Therefore, the trial court was not required to appoint counsel for him before it did so. *See id*.; *see also* TEX. FAM. CODE ANN. § 107.013.

Appellant argues that "[t]he ability to be represented by counsel after admitting to paternity cannot rise and fall on the completion of a DNA test of which the parent has no control over the timing[.]" The record reflects that Appellant knows he is D.D.'s father and that he requested DNA testing solely due to ICWA issues. Appellant could have acknowledged his paternity as required by law without waiting for the DNA results, as set forth in Sections 160.201(b) and 160.302(a) of the Family Code. *See* TEX. FAM. CODE ANN. §§ 160.201(b) (West 2022) (setting forth means by which father-child relationship is established, including "an effective acknowledgment of paternity"), 160.302(a) (West 2022) (setting forth requirements for valid acknowledgment of paternity); *see also id*. § 160.312(a)(1) (West 2022) (requiring vital statistics unit to prescribe forms for acknowledgment of paternity). Appellant does not argue that Sections 101.024 and 107.013 of

---

[5] The record indicates that during the first nine months of the case, the trial court conducted the adversary hearing, a status hearing, and an initial permanency hearing.

the Texas Family Code are facially unconstitutional or unconstitutional as applied to him, nor does he argue that due process mandates greater protection than those statutes provide.

We hold that the trial court did not deprive Appellant of a right to court-appointed counsel and, therefore, did not deprive Appellant of procedural due process. *See* TEX. FAM. CODE ANN. §§ 101.024, 107.013(a)(1), (3), (4). Accordingly, we overrule Appellant's sole issue.

### DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered February 15, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 15, 2023**

**NO. 12-22-00250-CV**

**IN THE INTEREST OF D.D., A CHILD**

Appeal from the County Court at Law No. 1

of Henderson County, Texas (Tr.Ct.No. FAM21-0414-CC1)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*